## BRUNELL v. MOUNTAIN STATES POWER CO.
### No. 7626.

Circuit Court of Appeals, Ninth Circuit.
Jan. 13, 1936.

306

J. W. McInturff, of Marshfield, Or., and McCamant, Thompson & King, of Portland, Or., for appellant.

Wilbur, Beckett, Howell & Oppenheimer, of Portland, Or., and Francis E. Marsh, of McMinnville, Or., for appellee.

Upon Appeal from the District Court of the United States for the District of Oregon.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an action for damages for personal injuries received by Fred W. Brunell, a minor aged 20 years, by an electric discharge from a power wire owned and operated by the Mountain States Power Company and accidentally touched by the minor. The lower court instructed the jury to return a verdict for the defendant. The alleged negligence solely relied upon on this appeal is the failure of the company to use automatic circuit breakers in lieu of fuses on the power line in question. The defendant denied that this was negligence, denied that such failure was a proximate cause of the accident, and claims that the evidence establishes negligence of the minor as a matter of law.

The power line in question extended from the power house of the appellee in North Bend, Or., to the Hauser Construction Quarries. About 4:30 p. m. Sunday, August 6, 1933, a Ford automobile, occupied by two boys, crashed into the pole supporting the appellee's power line and broke the pole so that the pole and its power lines sagged over the highway. Two of the wires came in contact, causing a short circuit which burned out the fuses on these two wires between the pole and the generating plant. The third wire was not short-circuited either to the other wires or to the ground, and it still carried its electric current, or, in common parlance, it remained a "hot" or "live" wire. This current passed through transformers which were located along the line between the point where the fuses blew out and the end of the line, and with which all three wires were connected, thus recharging the two disconnected wires from the current in the third wire so that each wire was dangerous. It is not shown which of the wires was touched by the injured minor. A fuse would only operate upon the line carrying an overload of electricity caused by a short circuit. An automatic circuit breaker could be so insulated that the overload on the two crossed wires would cause the opening of a switch on all three lines thus disconnecting all three from the power house.

Considerable testimony was directed to the question as to whether or not such an accident due to the severing of a power pole by an automobile going out of control on the highways was reasonably to be expected and hence guarded against, in the exercise of that high degree of care necessary in dealing with so deadly an agency as 11,500-volt electric current. The question, however, is somewhat broader than the duty to anticipate that careless or reckless drivers would leave or be thrown from the highway against a power pole thus severing it. It was the duty of the defendant to exercise a high degree of care to protect the public (Gentzkow v. Portland Ry. Co., 54 Or. 114, 102 P. 614, 135 Am.St.Rep. 821; Saylor v. Enterprise Elec. Co., 110 Or. 231, 222 P. 304, 223 P. 725) and, if it were reasonably to be anticipated that such lines might fall from any cause, to use that high degree of care to protect the public from coming into contact with such fallen wires. Failure so to do would be negligence.

We therefore address ourselves to the alleged negligence with a view of ascertaining whether or not there was substantial evidence of negligence to go to the jury. Because of the intervention of the third party there can be no inference of negligence on the part of the power company under the res ipsa loquitur doctrine. The evidence tends to show that if all three wires had contacted, all three fuses would have blown out and the accident could not have happened. If an automatic switch had been installed between the

power house and the place of accident, designed to disconnect all wires upon a short circuit of any of them and if it had worked as designed, the accident could not have happened. Plaintiff produced evidence that there was an automatic circuit breaker on the market; that such a device if installed, and if it operated, would have disconnected all the wires. William Meyers, an electrician, testified for plaintiff that if automatic pole circuit breakers such as were on the market had been installed a short circuit which would blow a fuse would operate to disconnect all three wires, and that it would be practical to install such a switch in place of the fuses which were installed. J. W. Asplund testified for the plaintiff and also for the defendant. He testified for the plaintiff as follows: "Under the conditions obtaining at the time of the accident it would be hard to say whether or not oil circuit-breakers would open due to a short circuit on the 2300 volt line. If I were to speak from experience I could answer. Theoretically it is supposed to but practically it does not. They may open but nine times out of ten they won't open."

He also testified for the defendant as follows:

"Top-pole circuit-breaker switches are not in common use on power lines similar to that running up Coos River. Fuses are in common use. * * * If an automatic switch were in operation instead of the fuses and there should be a short on the line, supposedly the line would clear but, as witness has previously testified, he cannot be positive that the line would clear. If the switch works the line does clear. If the switch does what it is designed to do it is supposed to clear the circuit. If the switch works it clears the circuit and if the circuit is cleared no one would be injured by coming in contact with a wire down on the road. If the switch works it doesn't matter which one of the wires gets in trouble.

"Anything that would blow the fuse should operate the switch. Witness thinks there is more protection to the traveling public on the Coos River Road from the fuses the defendant had at Eastside than the public would get from an automatic switch."

F. O. McMillan, an electrical engineer, testified for the plaintiff in part as follows:

"Witness is familiar with pole-top or automatic switches, automatic circuit-

breakers. * * * They are in practical use and have been in practical use since 1912. Outside automatic circuit-breakers are generally known to companies dealing in distribution of electrical energy. They are described in various catalogs along with other electrical equipment. They are part of the regular electrical equipment carried by firms supplying electrical equipment. They are manufactured by General Electric Company for distribution to the trade. They are also manufactured by other firms. All of the leading oil switch manufacturers make such switches.

"Under the testimony to which witness had listened showing the condition of the defendant's wires following the accident it appears that two fuses were blown. This indicates that at least two of the wires on defendant's line had come together for a sufficient period of time to blow the fuses. If that was the case and only two fuses were blown, if an oil circuit-breaker had been installed in like location the oil circuit-breaker would have opened and de-energized all of the lines. * * * These oil switches operate properly and under various circumstances. They are very reliable. In fact they are the most reliable circuit rupturing devices available at the present time. For that reason they are installed in all locations where the main circuits are to be opened, disconnected. * * * Witness does not know from a practical standpoint whether the circuit-breaker would work or not. He has information on the subject acquired from reports of experiments that have been published in the American Electric Engineer."

In view of this evidence, although there was some contradictory evidence, the question of the appellee's negligence was one for the jury under appropriate instructions.

The defendant claims that its negligence, if any, was not the proximate cause of the injury to the minor. If the power company had been responsible for the fall of the pole, it would, of course, be liable for the injury to the minor regardless of the matter of fuses or switches, if he were not guilty of contributory negligence. It was not responsible for such fall which was caused by the independent act of the boys whose Ford automobile crashed into the pole. Under these circumstances the appellee relies upon a decision by the Supreme Court in Atchison, T. & S. F. R. Co. v. Calhoun, 213 U.S. 1, 29 S.Ct. 321, 323, 53 L.Ed. 671. The court there considered an

injury to a three year old child who was a passenger with his mother on the defendant's railway train. The mother had handed her child to a man named Jones on the railroad station platform where she intended to alight. Jones was not an employee of the railway company, although the mother supposed that he was; the train had begun to move too rapidly for the mother to alight. Jones ran along the station platform for 75 to 100 feet with the intention of handing the child back to its mother. He ran into a baggage truck on the station platform, stumbled, and lost his hold on the child who fell under the car and was injured. The question considered by the court was "whether or not the company was guilty of negligence in leaving the truck in a dangerous position and not having the depot platform properly lighted, and did that condition directly and proximately cause the injury?" The court said: "It cannot be doubted that the conduct of Jones was careless in the extreme, though doubtless the motives which impelled him were good. But it is urged that Jones' negligence concurred with the negligence of the defendant in leaving the truck where it did, and that therefore both are responsible for the consequences. There is no doubt that the act of Jones and the act of the defendant with respect to the truck concurred in causing the injury, *and we assume that, if the defendant failed in its duty by leaving the truck at the end of the wooden platform, the verdict can be sustained."* The Supreme Court held that there was no negligence in leaving the baggage truck on the platform and therefore reversed the judgment. But the principle of that decision is applicable in the case at bar for if we assume in this case that the defendant was negligent in failing to anticipate the possible falling of the power line and in providing for that emergency by installing suitable safety devices to shut off the electric current in the fallen wires, then the negligence of the power company would be a concurring and proximate cause of the injury for which the company would be liable. The question of whether or not the company was negligent is a question for the jury and not for the court, and we express no opinion upon that matter, but simply hold that if there was such negligence it was a negligence continuing up to the time of the injury and was a proximate cause of the injury, notwithstanding the fact that the negligence of the boys in the Ford automobile was also a contributing cause to the injury.

The appellee claims that the minor was guilty of contributory negligence and that consequently the instructed verdict was correct. To develop the question of contributory negligence fully would require a detailed statement of all the facts surrounding the accident. The only question for our consideration is whether or not such contributory negligence was so clearly established as to show negligence as a matter of law. This rarely happens except when there is some specific legal duty or precaution which is omitted, as at railroad crossings, for instance. To show that the question of contributory negligence is a question of fact and not of law in the case at bar, it is sufficient to say that the minor, his father, brother, and a friend, Albert Saling, seeing the automobile, which had wrecked the pole, off the highway as the evident result of an accident, decided to stop to render aid to the victims of the crash. They parked their automobile off the highway and started across it. The injured minor testified that he did not see the sagging power wire. Albert Saling also testified that he did not see it. Saling walked under it without touching it. The injured minor immediately followed him and as he did so the top of his head touched the power wire causing his injuries. Under these circumstances the question as to whether the injured minor saw, or should have seen, and should have avoided the wire in the exercise of ordinary care for his own safety is a question of fact for the jury. The appellee relies upon Shade v. Bay Counties Power Co., 152 Cal. 10, 92 P. 62; Gray v. Union Electric Light & Power Co. (Mo.App.) 282 S. W. 490; Carroll v. Grande Ronde Electric Co., 47 Or. 424, 84 P. 389, 6 L.R.A.(N.S.) 290. These decisions have no application to the case at bar, for they all deal with the conduct of a person who voluntarily touched a power wire.

It should be made clear that we are not passing upon the factual question of negligence or contributory negligence. These questions are for the jury under appropriate instructions. The judgment must be reversed because these questions were not submitted to the jury.

Reversed.