411 So.2d 1331 (1982)
Rosemary OVERBY, Etc., Appellant,
v.
Richard P. WILLE, Etc., et al., Appellees.
No. 81-177.
District Court of Appeal of Florida, Fourth District.
March 10, 1982.
Rehearings Denied April 20, 1982.
Edna L. Caruso and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellant.
J. Burke Culler, Jr., of Adams, Coogler, Watson & Smith, P.A., West Palm Beach, for appellee Richard P. Wille.
*1332 John P. Wiederhold of Pomeroy, Betts, Wiederhold & Moses, West Palm Beach, for appellees City of Boynton Beach and Northeastern Fire Ins. Co. of Pennsylvania.
HERSEY, Judge.
At 5:20 a.m. on the morning of March 19, 1979, Charles Overby was found hanged by his belt in his cell at the Palm Beach County Jail. His widow, Rosemary Overby, in her capacity as personal representative of his estate, filed a wrongful death action against the City of Boynton Beach (and its insurer) and the Sheriff of Palm Beach County. Summary final judgments were eventually entered in favor of the defendants from which this appeal is taken.
The events leading up to this tragedy began on the afternoon of March 18th, the day before the suicide. Charles Overby had a history of mental disorder although that history was not known to the defendants. On the afternoon in question he flagged down a Boynton Beach policeman, Officer Chris Lee Bray, and explained to him that he thought he might have hurt someone, and therefore requested to be taken to the Mental Health Center. Upon arrival at the police station Overby became violent and struck Officer Bray. The officer then contacted the South County Mental Health Center and was advised (as it later turned out incorrectly) that the Center had no record of Overby. Officer Bray thereupon prepared an arrest form and affidavit of probable cause based upon a charge of assaulting a police officer and had Overby transported to the county jail. Both forms recited that Overby had initially requested that he be taken to the Mental Health Center.
The testimony indicates that the booking agent at the county jail did not read the affidavit but merely checked to see the substance of the criminal charges and to see if the affidavit was signed by the arresting officer. During the booking process Overby became involved in an altercation with another inmate, resulting in lacerations on his head requiring treatment at Good Samaritan Hospital.
After Overby was transferred back to jail, he was placed in an isolated detention cell for his own safety because of his belligerency and outward aggression. The desk sergeant wrote on the shift leader's turn-over sheet and conveyed to the custodial officers the information that Overby was a probable Signal 20, which was apparently, although the testimony is somewhat confused on this point, a police code indicating that an individual is mentally incompetent. Overby was thereafter placed in the isolated cell wearing his street clothes. Although recorded and non-recorded cell clock checks were made of the detention area by various personnel Overby was found dead at 5:20 a.m., hanging from his cell door by his own belt.
On these facts the summary final judgments were entered.
The issue with which we are thus presented is whether the decedent's act of self-destruction was an independent intervening cause which was not reasonably foreseeable. The trial court found as a matter of law that this question should be answered in the affirmative. We disagree and reverse.
It is conceded that where injury results from an active and efficient cause which intervenes between the negligent act of the tortfeasor and the injury, liability may well be a legal issue for determination by the court. Kwoka v. Campbell, 296 So.2d 629 (Fla. 3d DCA 1974). Appellees expect too much of that principle here, however, in as much as the question of whether the intervening cause was foreseeable is ordinarily one for the trier of fact. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980). Only a total absence of evidence to support an inference that the intervening cause was foreseeable justifies the court in removing the question from the trier of fact. See Guice v. Enfinger, 389 So.2d 270 (Fla. 1st DCA 1980). The Guice case also arose out of a jail suicide but in that case there was no evidence of mental or emotional aberration. The Guice court laid down yet another principle which has *1333 application here. The court stated that as to a loss or injury which is not a direct result of the negligent act, recovery will not be allowed if the injury was only "possible" as opposed to "probable." The opinion continues by defining the former term as: "those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again from the commission of the same act." 389 So.2d at 272, quoting from Cone v. Inter-County Telephone & Telegraph Co., 40 So.2d 148, 149 (Fla. 1949).
In Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA 1981), the concept of foreseeability and its relationship to liability is further analyzed. There we said:
In order for injuries to be a foreseeable consequence of a negligent act, it is not necessary that the initial tortfeasor be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur. Rather, all that is necessary in order for liability to arise is that the tortfeasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts. (citations omitted).
We stated further that:
If the harm that occurs is within the scope of danger created by the defendant's negligent conduct, then such harm is a reasonably foreseeable consequence of the negligence. The question of foreseeability and whether an intervening cause is foreseeable is for the trier of fact. Gibson v. Avis Rent-A-Car System, 386 So.2d 520 (Fla. 1980).
The question in the present case is whether the trier of fact could find, on the evidence and the permissible inferences to be drawn from that evidence, that it was reasonably foreseeable that harm would befall Overby either directly or indirectly as a result of the actions and omissions of the respective defendants.
The Boynton Beach Police Department heard from Overby's own lips that he had emotional problems requiring that he be immediately transported to the Mental Health Center or a similar facility. Subsequently they were confronted with totally irrational behavior in Overby's sudden and unprovoked attack upon Officer Bray. Notwithstanding, they caused his arrest and subsequent transfer to and detention in the county jail as a common criminal. Such questions as whether there was a duty to obtain mental health care for Overby or at the very least to ensure that the sheriff's department was fully apprised of these background facts remain to be answered. Whether they will require an answer in this case depends upon the threshold question of whether it was reasonably foreseeable that such an individual (one with obvious and expressed emotional problems) would probably come to harm if treated as a common criminal. The trier of fact should have an opportunity to resolve this issue.
The sheriff's department for whatever reason labelled Overby a "probable Signal 20." The evidence is unclear as to the precise meaning of the designation "probable Signal 20." Nonetheless, it is conceded that the term refers to mental and emotional instability of some type. Again there was an outburst of antisocial behavior resulting in actual injury to the individual. Further, the department was in possession of all of the information known to the Boynton Beach Police Department, whether or not that information was studied and understood. These facts and inferences are sufficient to raise the issue of foreseeability and to preclude summary disposition.
We recognize that law enforcement personnel are not to be held to the same standards as trained mental health specialists. We do not intend to imply here that they should be. If Overby reacted antisocially toward others by doing them violence then prudence may well dictate that he should have been placed in isolation, as indeed he was. In such case the question remains, how closely must he be watched. If, on the other hand, his conduct indicated a tendency toward self-destruction then different treatment is indicated.
*1334 In any event, the evidence shows that the sheriff's department has personnel trained in recognizing the symptoms of mental illness. No such individual was consulted in regard to Overby's condition.
Finally, the record discloses that an expert, Dr. William Bopp, a criminologist specializing in police administration testified that the procedures of the jail fell considerably below the reasonable standard of care.
Under these circumstances it was error to find that, as a matter of law, injury to Overby was not reasonably foreseeable. That question is for the trier of fact. We, therefore, reverse and remand so that it may be appropriately considered.
REVERSED AND REMANDED.
ANSTEAD and HURLEY, JJ., concur.