417 So.2d 764 (1982)
R.J. PADGETT, As Personal Representative of the Estate of Tommy Allen Padgett, Deceased, Appellant,
v.
WEST FLORIDA ELECTRIC COOPERATIVE, INC., a Florida Corporation, Appellee.
No. AI-12.
District Court of Appeal of Florida, First District.
July 29, 1982.
*765 Charles J. Kahn, Jr., of Levin, Warfield, Middlebrooks, Mabie & Magie, P.A., Pensacola, for appellant.
Richard Smoak of Isler, Brown, Smoak, Harrison & Nabors, Panama City, for appellee.
ERVIN, Judge.
Tommy Padgett's act of hitting a utility pole and becoming enmeshed in electrical wires that electrocuted and burned him was an intervening cause of his death. There are inferences of material fact that suggest that the appellee and defendant below, West Florida Electric Cooperative, could have foreseen this intervening cause, thereby making it a question of fact whether acts of the appellee constituted the proximate cause of Tommy Padgett's death. Paradoxically, these same inferences of material fact preclude the lower court's summary judgment for the appellee. We reverse and remand.
Young Padgett was driving home in the dark of early morning in rural Washington County. He apparently failed to negotiate a curve to the left in the roadway, because a post-accident investigation indicated that his car left the road, traveling 200 feet down into a ditch, hitting a clump of bushes, and continuing on until hitting and severing from the ground a utility or telephone pole. The car traveled another 96 feet before stopping. Padgett left his car, ran 33 feet and came into contact with three downed electrical wires, which caused his death by electrocution. His father filed suit, charging that the power company's negligence in maintaining its power pole and electrical line safety equipment was the proximate cause of his son's death. Implicit in this contention is the argument that the appellee was also negligent in placing the power pole in the location where it had been placed.
In granting summary judgment for the appellee, an affidavit before the court reveals that, as to the placement of the pole, an experienced professional electrical engineer stated that the defendant had negligently placed the pole on the outside of the curve of the roadway. Other than this statement the exact location of the pole is unknown, although the appellee asserts that it was placed 45 feet from the pavement.[1] Concerning the defendant's negligence as to the maintenance of the electrical wires, there is evidence to suggest that two of the wires came into contact with each other, thereby tripping a circuit breaker that de-energized them. Deposition testimony suggested that the circuit breakers were designed to operate within seconds of contact between two wires, but it is questionable whether this occurred, because there is evidence suggesting that the wires were fused together. A third wire was apparently still "live" and somehow suspended in mid-air. The engineer opined that the electric company not only had a duty to provide a reasonable safety system for downed power *766 lines for the purpose of protecting the public, but that the power company had negligently breached its duty.
As a general rule, utilities have "a duty to exercise care, both in the location or construction and in the use and maintenance of its lines," poles, and equipment. Peninsular Telephone Co. v. Marks, 144 Fla. 652, 198 So. 330, 332 (1940); Gibson v. Garcia, 96 Cal. App.2d 681, 216 P.2d 119, 120 (1950). "Although those engaged in transmitting current for domestic use are not insurers ..., they are held to a high degree of care." Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911, 915 (1938) (emphasis in original; cites omitted). They must "`do all that human care, vigilance, and foresight can reasonably do, consistent with the practical operation of its plant to protect those who use its electricity.'" Rice v. Florida Power & Light Co., 363 So.2d 834, 838 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979).[2]
There is evidence in the record suggesting that the appellee could have breached its duty by negligently placing and maintaining the power pole, as well as by negligently operating the circuit breaker safety system. Whether this purported negligence was the proximate cause of Tommy Padgett's death is another matter, because a power company is not under "a continuing duty to protect against any and all activity, however unlikely... ." Rice, supra, at 839.
In essence the case at bar creates a classic case of intervening causation. "This presents the question whether the asserted negligence in the placement of the pole is to be considered as the proximate cause, or whether the operation or movement of the colliding vehicle may be said to be the real cause, the collision with the pole being merely incidental." Injury to Traveler From Collision With Privately Owned Pole Standing Within Boundaries of Highway, 3 A.L.R.2d 6, 56 (1949). Thus, liability is recognized by the courts as generally turning upon: (1) location of the pole, e.g., is it so close or dangerously positioned as to pose a hazard, and (2) maintenance of the pole, as well as the circuit breaker system. Id. at 9.
Whether any negligence has occurred in carrying out either of the two foregoing considerations, so as to sustain a recovery, turns on whether such negligence can be considered the proximate cause of the accident. In turn, whether the negligence was the proximate cause rests on questions as to whether an unreasonable risk of harm occurred and upon traditional tort concepts of foreseeability,[3] because "[f]oreseeability is the measuring stick by which proximate cause is determined." Bryant v. School Board of Duval County, 399 So.2d 417, 421 (Fla. 1st DCA 1981), aff'd. in part and rev'd in part sub nom., Rupp v. Bryant, 417 So.2d 658 (Fla., 1982).
The appellee argues that decedent's injuries were proximately caused by the extraordinary exigencies of his car going out of control and striking the power pole, and, because of such unusual circumstances, the resulting death must be deemed unforeseeable. The law is clear that for the maintenance and placement of the pole and/or the unsafe operation of the electrical transmission system to be the proximate cause of the death, the death must have stemmed in a natural and continuous sequence from the placement and maintenance of the pole, the electrical transmission system and safety equipment. *767 Pope v. Pinkerton-Hays Lumber Co., 120 So.2d 227, 229 (Fla. 1st DCA 1960), cert. denied, 127 So.2d 441 (Fla. 1961). Since the evidence reveals that Padgett in all probability lost control of his car in order to have hit the pole, his actions constitute an intervening cause. Cf. Bryant, supra, 399 So.2d at 421; Gibson v. Garcia, supra, 216 P.2d at 121. Notwithstanding the fact that such actions are considered an intervening cause, if they were reasonably foreseeable the defendant's acts of maintaining and placing the pole and operation of the circuit breaker safety system may still be deemed to be a proximate cause of Padgett's death. Id.
The crux of the appellee's argument is that it was an extraordinary occurrence for the decedent's car to have gone out of control and traveled such a great distance, ending in Padgett's death. However, the method and extent of the injury is irrelevant, if the power company could have reasonably foreseen the occurrence of the injuries. Braden v. Florida Power and Light Co., 413 So.2d 1291, 1292 (Fla. 5th DCA 1982); Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA 1981); Broome v. Budget Rent-A-Car of Jax., Inc., 182 So.2d 26, 29 (Fla. 1st DCA 1966). In other words, whether an intervening cause is reasonably foreseeable is dependent on whether the harm that occurred is within the scope of danger or risk attributable to the power company. Bryant, supra, 399 So.2d at 421.
We have observed in another case that there are at least three different ways in which the harm that has occurred may be determined to be within the scope of danger:
First, the legislature may specify the type of harm .. . Second, if the same type of harm has occurred previously due to the same type of negligent conduct, and the tortfeasor has actual knowledge of this, liability can be established... . Third, liability can be made out if the negligence complained of has resulted in harm so frequently "in the field of human experience" that harm may be expected to happen again.
Bryant, supra, 399 So.2d at 421 (cites omitted); see also Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520, 522-523 (Fla. 1980).
In the case before us, the record infers that the appellee was aware that the same type of harm had occurred previously. First, appellee's employee, James Kirkland, a member of the repair crew, was questioned concerning the condition of the utility pole. He answered that he could not remember because so many of the appellee's poles had been involved in auto collisions. Second, the harm to which Tommy Padgett was subjected  injury or death from contact with downed, energized power lines  has occurred so frequently "in the field of human experience" as to be one which can be reasonably foreseen as coming within the scope of danger. This reasonable inference was referred to by the Florida Supreme Court in the following terms:
"The presumption of negligence is almost universally applied where travelers along a highway come in contact with a wire charged with a deadly current of electricity. The fact that a person while traveling along a highway, is injured by contact with a highly charged electric wire raises a presumption of negligence on the part of the company maintaining the wire. This rule applies to a wire not normally dangerous, such as a telephone or telegraph wire, which in falling comes in contact with a wire conveying a dangerous current and carries the current to the street."
Florida Power & Light Co. v. Bridgeman, supra, 182 So. at 915.
Recently, the Fifth District Court of Appeal was squarely faced with a case of a downed power line which caused injury due to the fact that it was still energized, because the power company's automatic safety equipment had failed to operate properly. In Braden v. Florida Power and Light Co., supra, a tree with a wasp nest in it was cut down. A young boy was waiting nearby with a jar of gasoline which he intended to put on the nest once the tree had been felled. The tree's fall caused it to sever a power line, and the company's safety equipment failed to de-energize the line that in *768 turn discharged electrical energy, igniting the gasoline and injuring the boy. The court noted that it was not unforeseeable that the power line might have been severed or that injury might have occurred. Id. at 1292. Implicit in this case is the recognition of the fact that downed, energized power lines have caused injury so frequently "in the field of human experience" as to be occurrences reasonably foreseeable enough to fall within the scope of danger.
The foregoing considerations suggest at the minimum reasonable inferences of foreseeable harm. If reasonable people could not differ as to the "total absence of evidence to support an inference that the intervening cause was foreseeable," only then may a court determine the issue as a matter of law. Overby v. Wille, 411 So.2d 1331, 1332 (Fla. 4th DCA 1982); Guice v. Enfinger, 389 So.2d 270 (Fla. 1st DCA 1980). Because there remain reasonable inferences that the intervening cause was foreseeable, the final determination as to foreseeability and proximate causation rests with the trier of fact. Bryant, supra, 399 So.2d at 421; see also Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54, 56 (Fla. 1978).
In passing we note that the parties devoted significant attention to the fact that the utility pole was placed at a distance from the roadway so great as to negate any inference that the intervening cause of Tommy Padgett's car leaving the roadway and hitting the pole was foreseeable. We recognize that, as a general rule, as the distance between the pole and the traveled way increases, there is a corresponding decrease in the number of cases favoring the plaintiff whose act of leaving the roadway constitutes an intervening cause. Only in a few instances has a plaintiff in such a situation been able to take his case to the jury, if the pole is located more than three feet from the pavement. See Annot., 3 A.L.R.2d 6, § 16 (1949); but see Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA 1981).
The case at bar is distinguishable from those cases given the fact that this accident occurred in the dead of night, which is a time of poor visibility; based on the inferences of foreseeability noted above and due to questions as to the sharpness of the curve, speed that cars normally travel when entering the curve, and location of the pole in relation to the curve. The record moreover does not disclose whether a car leaving the road at high speed would be likely to veer off the road at such an angle as to come in contact with the pole. Finally, and most importantly, the immediate cause of the decedent's death was not due to his colliding with a power pole, but with his coming into contact with an energized power line at some time following and at some distance from the collision. Under such circumstances, such factual questions arise as to whether the power lines could be reasonably anticipated to fall from any cause; whether the public might be reasonably expected to come into contact with those wires, and whether, in the event of collision with the poles, the circuit breakers maintained by defendant could properly de-energize the lines. Cf. Brunell v. Mountain States Power Co., 81 F.2d 305 (9th Cir.1936).
It is apparent that the inferences of material fact  that the appellee could have reasonably foreseen the harm that has occurred  yet remain unresolved. Therefore, the summary judgment is REVERSED, and this case is REMANDED for further consistent proceedings.
ROBERT P. SMITH, Jr., C.J., and SHAW, J., concur.
NOTES
[1] This statement is supported only by a letter from one of the attorneys below to the trial judge, which is not competent evidence. Further, the lower court's order recites that the pole was 47 feet from the pavement. Similarly, this is not supported by the evidence, because the record indicates that it was Tommy Padgett's car that, after hitting the pole and traveling another 96 feet, came to a stop 47 feet from the pavement. However, the record does indicate that a diagram, apparently indicating the exact locations and distances between the road, Padgett's car and body, and the utility pole, was utilized during the deposition of two investigating highway patrol officers. The diagram would have been helpful, although not dispositive, to any appellate review of this case. Unfortunately, the diagram was never placed into evidence.
[2] By administrative rule, the Florida Public Service Commission has further defined the duty of a power company: "The facilities of the utility shall be constructed, installed, maintained and operated in accordance with accepted good engineering practices to assure, as far as is reasonably possible, continuity of service, uniformity in the quality of service furnished, and the safety of persons and property." Fla. Admin. Code Rule 25-6.34(1). However, the fact that the construction and maintenance of electrical facilities and power lines may exceed recognized engineering standards is not necessarily conclusive as to the absence of negligence on the part of an electric utility. See Rice, supra, at 838; Florida Power Corp. v. Willis, 112 So.2d 15, 17 at n. 4 (Fla. 1st DCA 1959), cert. denied, 115 So.2d 6 (Fla. 1959).
[3] Gibson v. Garcia, supra, 216 P.2d at 120-121.