507 So.2d 1113 (1987)
FLORIDA POWER & LIGHT COMPANY and State of Florida, Department of Transportation, Appellants/Cross-Appellees,
v.
Ileana MACIAS, a Minor, BY Her Mother and Guardian, Neisis MACIAS, Appellee/Cross-Appellant.
Nos. 85-488, 85-499, 85-986 and 85-987.
District Court of Appeal of Florida, Third District.
January 13, 1987.
On Motion for Rehearing Denied June 23, 1987.
*1114 Steel, Hector & Davis and Patricia A. Seitz, Daniels & Hicks and Mark Hicks, William H. Peeples, Richard M. Gale, Miami, for appellants/cross-appellees.
Haddad, Josephs & Jack and Gary Gerrard, Coral Gables, for appellee/crossappellant.
Before HENDRY, NESBITT and FERGUSON, JJ.
NESBITT, Judge.
Florida Power and Light Company (FPL) and the Department of Transportation (DOT), defendants below, bring these consolidated appeals from a judgment of $2,668,000 in favor of Ileana Macias. We reverse the judgment under review.
Ileana, by her mother, Neisis Macias, brought this lawsuit for injuries received as the result of a car accident. Ileana's father, Jesus Macias, was driving the family car east on Okeechobee Road, when the wheel left the right edge of the roadway and fell into a "drop-off." He steered the car to the left to compensate, then the car yawed right, out of control, deflected off a utility pole, collided with a tree, and then came to a stop some 320 feet east of the drop-off. Ileana, who had been seated on Neisis' lap in the front passenger seat was "loaded" by the weight of Neisis into the dashboard and suffered extensive head injuries. Neisis sustained leg injuries.
Ileana alleged that Brewer Construction Co. (Brewer) and DOT, FPL, and the City of Hialeah were liable for injuries she received as the result of the negligent construction and maintenance of the road, negligent placement and maintenance of the utility pole, and negligent maintenance of the tree, respectively. She also sought punitive damages from FPL, alleging that FPL, though aware of the problem, ignored the danger posed by its utility pole. Brewer settled with the Maciases for $5,000,000 in return for a general release from the entire family. Following this, Neisis dismissed her individual personal injury action.
The trial court entered a final summary judgment for the City of Hialeah and a partial summary judgment for FPL on the issue of punitive damages. Ileana proceeded to trial against DOT and FPL. At the close of trial, the court denied the defendants' motion for a directed verdict. The jury returned a verdict of $4,500,000 in favor of Ileana, finding DOT 60% negligent and FPL 40% negligent. Defendants moved for a judgment notwithstanding the verdict, and for a setoff of the Brewer *1115 settlement against the verdict, pursuant to section 768.041(2), Florida Statutes (1983). The trial court held an allocation hearing and determined, over defendants' objections, that Ileana was entitled to only $1,832,000 of the $5,000,000 lump-sum Brewer settlement. Setting off the verdict with Ileana's allocation, the court entered judgment against DOT and FPL for $2,668,000. Ileana's motions for reconsideration of the summary judgment on punitive damages, additur, and for new trial on damages were denied.

I. FPL's Appeal
FPL contends that where an out-of-control vehicle leaves the traveled portion of the roadway and collides with its utility pole, FPL is not liable as a matter of law.
Duty is a necessary element to a claim of negligence. Florida Power & Light Co. v. Lively, 465 So.2d 1270, 1273 (Fla. 3d DCA), review denied, 476 So.2d 674 (Fla. 1985); Prosser & Keeton, The Law of Torts § 30 (5th ed. 1984) [hereinafter Prosser & Keeton]. Duty, in general, has been defined as an "obligation ... recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." Prosser & Keeton, § 30, at 164.
Ileana contends that section 362.01, Florida Statutes (1983), creates a special duty on the part of FPL. The unambiguous language of the statute, however, makes it applicable to telephone and telegraph operators only. Since no other statute gives rise to an applicable duty, if FPL owes a duty, it must arise under the common law.
A utility pole owner, such as FPL, has been said to owe the same duty as a possessor of land who creates an artificial condition thereon. Boylan v. Martindale, 103 Ill. App.3d 335, 59 Ill.Dec. 43, 431 N.E.2d 62 (1982). An owner or occupier of land who creates an artificial condition in such close proximity to a
highway that he realizes or should realize that [the condition] involves an unreasonable risk to others accidently brought into contact with [it] while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
(a) are traveling on the highway, or
(b) foreseeably deviate from it in the ordinary course of travel.
Restatement (Second) on Torts § 368 (1965).
Ileana alleges that FPL had knowledge of seventeen accidents involving its utility poles, all in the general vicinity of the pole involved in this case, and all within twenty-one months preceding this accident.[1] It is Ileana's contention that this knowledge, coupled with the fact that FPL maintained the pole just six feet from the roadway, made Jesus' deviation from the roadway foreseeable and, thus, gave rise to a duty on the part of FPL.
It is incumbent upon the courts to place limits on foreseeability, lest all remote possibilities be interpreted as foreseeable in the legal sense. Since the chance that a vehicle in the ordinary course of travel will deviate from the roadway and collide with a pole is only a remote possibility, under certain circumstances it is not a legally foreseeable event. Lively, 465 So.2d at 1276. Thus, merely placing or maintaining a utility pole in close proximity to a roadway does not create a duty on the part of the utility company. See Lively, 465 So.2d at 1276; Middlethon v. Florida Power & Light Co., 400 So.2d 1287 (Fla. 3d DCA 1981); Speigel v. Southern Bell Tel. & Tel. Co., 341 So.2d 832 (Fla. 3d DCA 1977).
In determining whether the condition creates an unreasonable risk of harm to persons lawfully traveling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come into contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far... . Distance is important, however, only as it affects the recognizable risk; and other factors such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account.
*1116 Restatement (Second) on Torts § 368, comment h (1965).
In Padgett v. West Florida Elec. Coop., Inc., 417 So.2d 764 (Fla. 1st DCA 1982), the court noted that "as a general rule, as the distance between the pole and the traveled way increases, there is a corresponding decrease in the number of cases favoring the plaintiff... . Only in a few instances has a plaintiff ... been able to take his case to the jury, if the pole is located more than three feet from the pavement." 417 So.2d at 768. Thus, the plaintiff must present some evidence which indicates a particularly dangerous condition which would make it likely, and thus foreseeable, that vehicles would deviate from the roadway and collide with the particular pole alleged to have been negligently maintained. Boylan, 59 Ill.Dec. at 51-52, 431 N.E.2d at 70-71; Anthony v. Jacksonville Transp. Auth., 383 So.2d 650 (Fla. 1st DCA 1980); see Padgett, 417 So.2d at 768. Where there is evidence that a pole is placed at a curve or on a hill with poor visibility, or that cars normally drive at excessive speeds on the adjoining road, there may be a sufficient basis for liability. See Peninsular Tel. Co. v. Marks, 144 Fla. 652, 198 So. 330 (1940); Padgett, 417 So.2d at 768. In contrast, the facts in this case show that the road was straight and level. The pole, six feet from the pavement, was not obscured from view; visibility was good, and the speed limit was moderate. Additionally, Ileana has failed to present any other evidence to show that FPL should have foreseen the collision with its pole.
This court has previously held that "a utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the traveled portion of the roadway out of control." Speigel, 341 So.2d at 833. Although Ileana contends that the vehicle never left the traveled portion of the roadway and was not out of control, we are unpersuaded by both arguments. A roadway is defined by section 316.003(43), Florida Statutes (1983), as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." When the car veered off the pavement onto the shoulder it ceased to travel on the roadway. Additionally, control, as defined by Black's Law Dictionary 298 (rev. 5th ed. 1979), is "[t]o exercise restraining or directing influence over. To regulate; restrain; dominate; curb; to hold from action; overpower; counteract; govern." Assuming that Jesus did not intend to hit the pole and tree, he failed to restrain the vehicle from doing so; therefore, he necessarily lost control of it for some reason unrelated to the placement of the pole.
Based upon the foregoing analysis, the accident, being of an extraordinary nature, was not legally foreseeable to FPL. Accordingly, FPL owed no duty to guard against it. The trial court erred in denying FPL's motion for a directed verdict.

II. DOT's Appeal
DOT contends that the court erred in excluding evidence of both Jesus and Neisis Macias' placement of Ileana in the car and of their failure to use safety restraint devices. DOT asserts that this evidence could have proved that DOT was not the proximate cause of Ileana's injuries. We disagree.
Evidence of nonuse of seat belts "should not be considered by the triers of fact in resolving the issue of liability unless it has been alleged and proved that such nonuse was a proximate cause of the accident." Insurance Co. of N. Am. v. Pasakarnis, 451 So.2d 447, 454 (Fla. 1984). It is undisputed that the seat belts were not a contributing factor to this accident. Additionally, parents' negligence may not be imputed to the child to diminish recovery or limit a third party's liability. Burdine's, *1117 Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462 (1941); Flick v. Malino, 356 So.2d 904 (Fla. 1st DCA 1978); Dubov v. Ropes, 124 So.2d 34 (Fla. 3d DCA 1960); Restatement (Second) of Torts § 488 (1965). Evidence of Neisis and Jesus' failure to protect Ileana with seat belts was, therefore, properly excluded at trial.
DOT contends that it was entitled to a larger setoff of the judgment based upon Brewer's settlement. Pursuant to section 768.041, Florida Statutes (1983), a defendant is entitled to have all settlement funds paid by a joint tort-feasor in satisfaction of the same damages the plaintiff sued for subtracted from the judgment rendered against the defendant. This right of setoff prevents duplicate recovery by the plaintiff for a single injury. See Devlin v. McMannis, 231 So.2d 194 (Fla. 1970). Since Ileana was the only party, among those who settled with Brewer, to bring suit against DOT, only the amount of the settlement allocated to her could be used to set off the judgment against DOT.
DOT contends that the trial court's allocation of the Brewer settlement was improper and resulted in Ileana receiving a reduced share of the settlement and in turn resulted in a reduction of the setoff to which DOT was entitled. A non-settling tort-feasor may attack an improper allocation which detrimentally affects its right to setoff in order to effectuate the purpose of section 768.041. See, e.g., Dionese v. City of West Palm Beach, 485 So.2d 1361 (Fla. 4th DCA 1986) (non-settling joint tort-feasor was entitled to attack apportionment of settlement done unilaterally by the plaintiffs); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978) (non-settling tort-feasor was entitled to attack court apportionment of a settlement, though not a party to the settlement, where the effect was to deny any setoff against the verdict). After reviewing the record, we have determined that the allocation was erroneous and that DOT properly raises this issue.
Brewer paid a lump sum settlement of $5,000,000 in return for the Macias' release and covenant not to sue. Following the judgment against DOT, the trial court, upon DOT's motion for setoff, conducted a hearing to allocate the settlement and made the following determination:

 a. ILEANA MACIAS, a minor, for
 compensatory damages $1,832,000
 b. NEISIS MACIAS, for loss of
 earnings of ILEANA until age 18 15,000
 c. NEISIS MACIAS and JESUS
 MACIAS, for medical and related
 care of ILEANA to age 18 806,000
 d. NEISIS MACIAS, derivative
 claim 1,000,000
 e. JESUS MACIAS, derivative claim
 (ILEANA) 1,000,000
 f. NEISIS MACIAS, individually,
 for her compensatory damages 228,000
 g. JESUS MACIAS, for his
 derivative claim based on his
 wife's permanent injury 100,000
 h. RICARDO, ROBERTO and
 JESUS, JR. (Ileana's brothers),
 minor boys, and JESUS MACIAS,
 for discharge of potential bodily
 injury claims, $1,000 each, a total
 of: 4,000
 i. RICARDO, ROBERTO and
 JESUS, JR., for derivative losses
 based on their mother's
 permanent injury, $5,000 each, a
 total of: 15,000
 __________
 TOTAL $5,000,000

The trial court then granted DOT's motion for setoff and reduced the $4,500,000 judgment by the $1,832,000 allotted to Ileana in satisfaction of her claim against Brewer, and entered judgment against DOT in the amount of $2,668,000.
The primary error in the allocation proceeding was that Ileana's interests were not properly represented. The trial court permitted Neisis, Ileana's mother and general guardian, to represent Ileana over the defendants' objection and request for the appointment of a guardian ad litem. Neisis' interests conflicted with those of her ward because she sought compensation for her own injuries from the same fund that was to provide compensation to Ileana, as well as the rest of the Macias family. It should have become apparent to the trial court that Ileana's interests were not being represented when Neisis argued that she was entitled to a disproportionate share of the settlement fund and failed to object on Ileana's behalf to the other multifarious claims by the family, some of which were *1118 incommensurate with the injuries sustained and others of which were legally unsupportable. At that point, the trial court should have appointed a guardian ad litem for Ileana, as authorized by section 744.391, Florida Statutes (1983), in order to protect her interests. See In re Estate of Verdier, 281 So.2d 543 (Fla. 2d DCA), cert. denied, 287 So.2d 97 (Fla. 1973) (interpreting section 732.54, Florida Statutes (1967), the forerunner of section 744.391, to authorize, if not direct, the appointment of a guardian ad litem when a general guardian's interests conflict with those of his ward); cf. In re Castro, 344 So.2d 270 (Fla. 4th DCA 1977), cert. denied, 355 So.2d 513 (Fla. 1978); Comerford v. Cherry, 100 So.2d 385 (Fla. 1958) (test for appointment of a guardian is the welfare of the child).
The failure of the trial court to ensure that Ileana was properly represented overshadowed the entire proceeding and makes the allocation scheme suspect. This is especially so in light of the trial court's erroneous award of $15,000 to Neisis' sons for derivative losses due to Neisis' injuries. Children have no right of action for loss of parental consortium. See Zorzos v. Rosen, 467 So.2d 305 (Fla. 1985). Additionally, the propriety of the sums allocated to Neisis and Jesus for their derivative losses due to Ileana's injuries is questionable since there was no specification as to what aspects of loss the award was attributable. Cf. Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956) (father could not recover for personal injury, pain, disfigurement, or permanent disability inflicted upon child); Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225 (1926) (same); but cf. Yordon v. Savage, 279 So.2d 844 (Fla. 1973) (parent has right of action for loss of child's companionship, society, and services). This also confirms the suspect nature of the allocation. We therefore reverse the trial court's determination of setoff and remand this case so that the trial court may hold another hearing to allocate the settlement funds paid by Brewer. Further, we direct the trial court to appoint a guardian ad litem to represent Ileana's interests. This representation should resolve the problems created by lack of proper representation at the previous hearing, and produce the correct portion of the settlement which may be used to offset the verdict against DOT.

III. The Cross-Appeal
The foregoing analysis of FPL's lack of duty resolves Ileana's first issue on cross-appeal. Ileana's other contentions with respect to a new trial and additur are equally lacking in merit. See Griffis v. Hill, 230 So.2d 143 (Fla. 1969).
To recapitulate, the judgment against FPL is reversed. We affirm the trial court's judgment as to DOT's liability and the jury verdict of $4,500,000, but reverse the setoff. Following the allocation hearing as ordered herein, the trial court is directed to set off the verdict with the portion of settlement funds allocated to Ileana in compensation of the same injuries for which she sued DOT.
Affirmed in part, reversed in part, and remanded for further proceedings.

ON MOTION FOR REHEARING DENIED
DOT files its motion for rehearing, asserting that our decision must be modified to comply with the subsequent decision of our supreme court in Dionese v. City of West Palm Beach, 500 So.2d 1347 (Fla. 1987). Since this case does not involve a unilateral agreement between plaintiffs, but rather involves a court apportionment of a settlement fund which expressly recognizes various claims, many of which belong to persons not parties to this action, we find that our decision is consistent with Dionese. Consequently, DOT's motion is denied. Also, finding Macias's motion for rehearing to be without merit, it is, likewise, denied.
NOTES
[1] It should be noted that of the previous accidents none involved the same utility pole as in the present case. Also, all of the previous accidents which Ileana alleges made the present collision foreseeable involved drivers who were either intoxicated, fleeing from the authorities, or who had fallen asleep while driving.