THOMPSON, Judge.
John Graham appeals from an adverse summary judgment in favor of Steak N’ Shake. Graham alleges that Steak N’ Shake breached its duty to protect him as a business invitee from the negligent act of Ryan Dwyer Langley. Graham argues it was foreseeable that Langley would drive his Chevrolet Blazer through a plate glass window and injure Graham while the latter was a patron inside Steak N’ Shake. Steak N’ Shake argues that as a matter of law, the accident was not foreseeable and that entry of the summary judgment for Steak N’ Shake was proper. We affirm.
Graham was sitting inside the Steak N’ Shake when Langley attempted to park in a parking space adjacent to the restaurant. Graham was in a booth next to a plate glass window which reached from ceiling to floor, perpendicular to the parking space. Langley testified that his foot slipped from the brake pedal and hit the accelerator pedal. The vehicle drove over the curb, across the sidewalk, and through the Steak N’ Shake glass window. Graham’s booth was knocked six feet upon impact and Graham was severely injured. Because Langley’s blood alcohol level was between .118 and .123 when tested approximately one to two hours after the accident, he was charged with driving under the influence of alcohol. Graham sued Langley and Steak N’ Shake. He argued that the accident was foreseeable, and that Steak N’ Shake could have prevented the accident by erecting a curb at least six inches high or by erecting a wheel stop or an adequate barrier between the restaurant and the parking spaces. Graham’s expert testified that the curb at the point of the accident was approximately 3½ inches high and that, had it been six inches high, it may have stopped Langley’s vehicle.
Steak N’ Shake presented affidavits stating that there had been no similar accidents at the restaurant, and that the building complied with all the applicable building codes in existence at the time of construction. The trial court found that the accident was not foreseeable and granted Steak N’ Shake’s motion for summary judgment. We agree for two reasons.
First, in order to impose a duty upon Steak N’ Shake, Langley’s driving into Steak N’ Shake must have been reasonably foreseeable, not just possible. Firestone Tire & Rubber Co. Inc. v. Lippincott, 383 So.2d 1181 (Fla. 5th DCA), rev. denied, 392 So.2d 1376 (Fla.1980). One way to establish foreseeability is to show that a specific incident occurs with such frequency that it may be expected to happen again, thus suggesting that the defendant reasonably needed to take steps to avoid or prevent the incident. Id.; see also Molinares v. El Centro Gallego, Inc., 545 So.2d 387 (Fla. 3d DCA), rev. denied, 557 So.2d 866 (Fla.1989). Here the record is clear that no vehicle previously had been driven into that Steak N’ Shake restaurant. Further, there was no evidence presented by Graham that the height of the curb deviated from the construction code existing at the time the buflding was constructed. Even Graham’s expert testified that he did not know if the six inch curb standard applied when the building was constructed.
Second, prior appellate decisions have held that driving a vehicle through the glass window of a commercial business is not legally foreseeable. This case is identical to Jones v. Dowdy, 443 So.2d 467 (Fla. 2d DCA 1984) and Schatz v. 7-Eleven, Inc., 128 So.2d 901 (Fla. 1st DCA 1961). In both cases, the district courts held that although store owners have a duty to exercise ordinary care to maintain their premises in a reasonably safe condition, they have no duty to protect patrons from injuries caused by a vehicle driven through a window and into the store. Dowdy, 443 So.2d at 467; Schatz, 128 So.2d at 904. The issue of Steak N’ Shake’s liability was one of law to be decided by the trial court since there were no issues of fact eligible for jury consideration, and the trial court correctly determined that given the undisputed facts, Steak N’ Shake was not liable to Graham. We affirm the summary judgment.
AFFIRMED.
*1149 GRIFFIN, J., concurs.
W. SHARP, J., dissents with opinion.
W. SHARP, Judge, dissenting.
I respectfully dissent. In my view, the foreseeability of the accident that occurred in this ease, is a question which should be answered by a jury. It should not be determined by the trial judge as a matter of law, granting Steak N’ Shake’s motion for summary judgment.
In granting the summary judgment motion, the trial judge relied on two appellate cases it thought were controlling, and which mandated that result:[1] Jones v. Dowdy, 443 So.2d 467 (Fla. 2d DCA 1984) and Schatz v. 7-Eleven, Inc., 128 So.2d 901 (Fla. 1st DCA 1961). Jones simply cites Schatz as virtually identical to the facts in that case, without any additional analysis of the foreseeability issue. In Jones and Schatz, a customer (business invitee) was injured while inside a store premises, when an automobile driven by (presumably) another store patron drove a ear from the store parking lot, over a curb (six inches high in Jones and three to four inches in Schatz), across a ten-foot wide sidewalk, and through a glass store-front wall. The plaintiff in Schatz produced an affidavit in opposition to the defendant’s motion for summary judgment, executed by an engineer, who expressed his opinion as a safety expert, that a barrier of some kind should have been placed between the parking lot and the glass to prevent cars from crashing through the wall and injuring patrons inside.
The court in Schatz declared:
[I]t cannot be contended with any degree of reason or logic that the owner of a store, by permitting automobiles to park perpendicularly to the curb in front of his entrance, or by failing to erect an impregnable barrier between the store and an adjacent area where motor vehicles are driven and parked, should have anticipated that automobiles will be negligently propelled over the curb and across the sidewalk into the entrance of his store. We are not unmindful of the obvious fact that at times operators lose control over the forward progress and direction of their vehicles, either through negligence or as a result of defective mechanisms, which sometimes results in damage or injury to others. In a sense, all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequence resulting therefrom aré matters of chance and speculation. If as a matter of law, such occurrences are held to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter. Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law. (emphasis supplied).
128 So.2d at 904.
In rendering its decision, the Schatz court was obviously concerned about the possible “unlimited” imposition of liability on premises owners with stores configured as many convenience type stores then, and presently, are constructed. It erroneously stated that this duty would be imposed on such store owners “as a matter of law,” since what was involved in that case was a summary judgment for the defendants. At worst, the foreseeability issue would have been sent to the jury for a possible finding of liability, as the dissent pointed out. The Schatz court assumed a jury would require an “impregnable” barrier. That is also unfounded.
To take a case away from the jury requires courts that do so, and those which affirm these actions, to declare that no “reasonable” person could reach any other conclusion.[2]
*1150 However, there was a rational dissent in the Schatz case, and there have been numerous cases in other jurisdictions which reverse summary judgments and hold such cases should go to a jury.[3]
The record in this case, taking all favorable inferences in the non-moving party’s favor as we must do,[4] established that Graham and a friend entered the Steak N’ Shake located in Winter Park, Florida, as business invitees, seeking to order and consume food and beverage. They sat in a booth which was placed directly in front of a floor-to-ceiling, plate-glass wall. Their backs were towards the window so they could not see cars driving up to park perpendicularly to the glass, just outside.
Before they had time to place an order, they were hit from behind by a Chevy Blazer, driven by the defendant Langley. The car shoved them into the table in front of them, shattered the glass wall, and knocked tables and chairs about. The grill and front part of the Blazer haulted inside the restaurant. Langley tried to back out, but in so doing, moved a bit further forward. Graham and his friend scrambled out of the booth and ran for the far side of the restaurant. Graham alleged he suffered abdominal pain, hernia, and shoulder and neck pain. The extent of his injuries were in dispute but this fact cannot justify a summary judgment being entered against him.
The configuration of the restaurant was typical of like establishments. It was located on a heavily travelled highway. Perpendicular to the sides and front, parking slots for cars were indicated by stripes painted on the pavement. Some of the parking slots had wheel stops or bumpers in front of them. But, the parking slots in front of the glass wall where Langley pulled in to park, had none.
Langley actually pulled his Blazer into a handicapped parking space, but was not aware of that fact since it was not clearly marked. That parking space ended with a three and one-eighth inch curb. Beyond the curb was a forty-two inch wide sidewalk. Next to the sidewalk was a dirt space, twenty-five inches wide (a so-called “planter” without walls), containing a few small bushes. Next to the plants was the glass wall, running from ground to ceiling without any brick or mortar at ground level. In reality, it was a glass curtain, as one expert described it.
Langley testified he and a friend decided to stop at the Steak N’ Shake to get something to eat. It was 2:30 a.m. in the morning. They had been at a party and he had consumed a number of beers. He almost brought the Blazer to a stop when his foot slipped off of the brake and onto the accelerator. The vehicle rolled over the curb, and through the glass wall. Langley bumped into the pole that held up the glass, bent it, and smashed the glass. He felt he was going only a minimal speed, one or two miles per hour. He testified that he did not really hit the accelerator hard, just glanced it, and as he crossed the sidewalk, he was already applying the brake. But there was nothing to slow or stop the Blazer from rolling forward into the glass curtain.
In support of Steak N’ Shake’s motion for summary judgment, counsel established by affidavits and depositions, that the restaurant had never had such a similar accident occur, prior to this one. A registered architect also opined that the restaurant and parking lot conformed to the city building codes. There are no provisions in the Winter Park building code that set standards for curb height be *1151 tween a parking area and a walkway, and none that require any kind of barrier between parking areas and sidewalks or glass walls in adjacent buildings.
In opposing the summary judgment motion, Graham proffered a photograph of the restaurant and layout, and the witnesses’ testimony about how the accident occurred. In addition, Graham filed the deposition and affidavit of a registered landscape architect who opined that the situation and configuration of the parking spaces, low curbing, lack of stops or barriers of any kind, and the proximity of the glass curtain to the perpendicular parking slots, with the diners seated directly behind, was potentially hazardous and dangerous. Shortly after the accident occurred in this case, the booths were moved away from the glass curtain.
The architect testified that the restaurant’s three-and-one-half inch curb is below the Florida Department of Transportation’s six-inch standard for curbs, and is insufficient to restrict a vehicle from intruding onto the sidewalk as well as into the glass curtain. When a vehicle as large as. a Blazer is pulled into the parking slot to its end, its bumper will overhang the sidewalk, leaving only a twelve to eighteen inch passage way for a pedestrian trying to gain access to the restaurant. The particular parking space involved in the accident was not in compliance with the Florida Department of Transportation requirements for a handicapped parking space, because it lacked proper signage and did not have a six inch curb or some other alternative car stop such as a bollard or wheel stop.
He also testified that he thought the site showed a lack of compliance with normal standards of care. Traffic should not have been directed to pull directly into the parking lots from the highway, as they were in this location. The narrow walk way and glass curtain in close proximity to parking vehicles are basically unprotected and inherently dangerous. Minimum protection would be a wheel stop or a six-inch curb. A bollard would be better. Bollards are used for areas where high pedestrian traffic near vehicles is expected, such as entrances, outside phone booths, and pedestrian drop off points.
He also said, in his opinion, a six-inch curb or a wheel stop might have prevented this accident. The expert witness for Steak N’ Shake took an opposite view. But that is the kind of stuff a disputed material fact issue for a jury’s determination, is made of. See Navison v. Winn & Lovett Tampa, Inc., 92 So.2d 531 (Fla.1957).
The general principles of tort law applicable to this kind of care are easily stated, and commonly agreed upon. The Restatement of Torts (Second) § 344 provides:
Business premises open to public; acts of third persons or animals.
A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
(a) discover that such acts are being done or are likely to be done, or
(b) Give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
Patrons of restaurants are business invitees, and accordingly an owner-operator of the premises owes them an affirmative duty to protect them from dangers which are known, or which with reasonable care, might be discovered. Prosser and Keeton on the Law of Torts, § 61 (5th ed 1984). It is the implied representation made to the public by holding the land open to them, that it has been prepared for their reception, which is the basis for the liability.[5] This special duty is owed wherever this special invitation is extended, from entrances to exists, to telephones, to toilets, and to all parts of the premises which the public is expected to use.[6]
The owner-operator of premises open to the public for business must exercise control over the conduct of third persons who may *1152 injure a visitor, if by reasonable diligence, the owner could have protected the patron.[7] But the owner is not required to prevent the unusual or abnormal. Innkeepers owe a high degree of care for the safety of their patrons, but they are not insurers of their guests’ welfare under all circumstances. Bu-det v. K-Mart Corp., 491 So.2d 1248 (Fla. 2d DCA 1986).[8] Whether the innkeeper has exercised reasonable care for the safety of a patron is determined in the light of the circumstances of each case.
The application of these agreed upon principles is where the difficulties arise. Schatz and Jones take the dogmatic view that under almost no circumstances are accidents caused by the negligent operation of vehicles, or their mechanical failure, which result in the vehicle injuring a business invitee, foreseeable by the premises’ owner-operator, because losing control of a car is not normal. Ergo, it is not foreseeable. See also Krispy Kreme Doughnut Co., v. Cornett, 312 So.2d 771 (Fla. 1st DCA 1975), cert, denied, 330 So.2d 16 (Fla.1976). Winn-Dixie Stores, Inc. v. Cam, 473 So.2d 742 (Fla. 4th DCA 1985), rev. denied, 484 So.2d 7 (Fla.1986) repeats this rather circular reasoning in a case where a car left a public roadway and hit a customer on the public sidewalk outside of a store.
However, without expressly receding from the Schatz dogma, later Florida appellate eases have held that cars going out of control in business parking lots, which injure other business patrons, may indeed be foreseeable events, which the owner-operator of the business should take some steps to guard their patrons against. Whether or not reasonable steps were taken or whether or not ones that should reasonably have been taken, would have prevented the injury or accident, are issues for the jury. See Thompson v. Ward Enterprises, 341 So.2d 837 (Fla. 3d DCA), cert, denied, 351 So.2d 409 (Fla.1977) (patron standing at store entrance, hit by car parked perpendicular to entrance which started unexpectedly in forward gear pushing patron back through entrance and into the store); Molinares v. El Centro Gallego, Inc., 545 So.2d 387 (Fla. 3d DCA), rev. denied, 557 So.2d 866 (Fla.1989) (patron of restaurant standing at entrance hit by car driven by another invitee, which jumped a two inch curb and pinned the patron to the restaurant wall); Hammond v. Springtree Properties, Inc., 668 So.2d 1004 (Fla. 2d DCA 1996), rev. granted, 677 So.2d 841 (Fla.1996) (patron hit on sidewalk after leaving restaurant by van that jumped the curb from the parking lot); Cohen v. Schrider, 533 So.2d 859 (Fla. 4th DCA 1988) (business invitee using phone located on outside of a 7-Eleven building hit by car which jumped curb from store’s parking lot, onto sidewalk); Johnson v. Hatoum, 239 So.2d 22 (Fla. 4th DCA 1970) (business invitee in process of buying food at walk up food counter outside of restaurant, hit by car operated by another customer on the premises); Grissett v. Circle K Corp. of Texas, 593 So.2d 291 (Fla. 2d DCA 1992) (person using public telephone located on front wall of store injured when a ear in parking lot lost its brakes and rolled onto to the sidewalk, crushing him against the storefront).
Although these cases implicitly reject the Schatz dogma about ears going out of control not being foreseeable events, the eases that do discuss Schatz point out that the injury to a patron in Schatz occurred inside rather than outside the business establishment. In my view, that is a distinction without import. As described by the Restatement and Pros-ser, the duty owed to a business invitee by an innkeeper extends throughout the business premises intended for his use — entrances, exits, sidewalks, and clearly, the dining area where a patron is encouraged to sit and have dinner. In this case, Graham might as well have been dining on the narrow sidewalk, at a picnic table, for all the protection the glass curtain provided him.
Cases in other jurisdictions have not seized upon this inside versus outside distinction. For example, in Zippy Properties, Inc. v. Boyd, 667 S.W.2d 312 (Tex.App.Ct.1984), the court held that the question of whether the store owner-defendant failed to maintain the store in a reasonably safe condition was one *1153 for resolution by the jury. In that ease, a patron drove a car from the parking lot into the building, and injured another patron inside. The court pointed out that the store provided no structural guards, railing, raised curbs or barriers of any kind between it and the adjacent parking lot. In addition, there was a ramp in front of the store’s double entrance doors, and the ear in this case had run through the front door, pinning the customer to the rear wall.
Similarly, in Denisewich v. Pappas, 97 R.I. 432, 198 A.2d 144 (1964), a car operated by another business invitee, in the parking lot and at a low rate of speed, broke through an insubstantial restaurant wall adjacent to the booth at which the injured patron was seated. The store had failed to provide an adequate barrier between the parking lot and the insubstantial wall. The court held that the question of whether or not the store breached its duty to use reasonable care to maintain the premises in a condition reasonably safe for patrons dining in the restaurant was properly sent to the jury. The jury found liability, and the appellate court affirmed.
In McAllen Kentucky Fried Chicken No. 1 v. Leal, 627 S.W.2d 480 (Tex.App.1981), a customer was inside, dining, when another patron drove a vehicle from the adjacent parking lot into the wall of the restaurant. The jury found the store partially liable because it failed to exercise reasonable care to maintain its establishment in a reasonably safe condition by having in place a barrier of some kind to keep traffic from rolling through the restaurant walls. In this case, the driver of the car had brake failure and she testified she was traveling at a slow speed. Had there been some kind of barrier she might not have hit or penetrated the building.
Dalmo Sales of Wheaton, Inc. v. Steinberg, 43 Md.App. 659, 407 A.2d 339 (Md.App.1979) is an inside-outside case that illustrates why this distinction is vacuous. In Dalmo, a customer was walking on a narrow sidewalk in front of a store. The store front was glass— a metal skinned wooden base sixteen inches high, on top of which was placed a large plate glass window. Parking for cars was provided perpendicular to the storefront. If a ear pulled up to the end of the parking slot, the front end would overhang the sidewalk by two feet or more, leaving only a three-and-a-half foot passage way for pedestrian traffic. There were no wheel stops or bollards and no substantial curb.
A customer trying to jump start his car had it flip from neutral into gear, and leap over the sidewalk. The car pushed the plaintiff, who had almost reached the front entrance, into and through the plate glass window, where it crushed her severely. Part of the window dropped on her legs “in the manner of a guillotine.” Had the plaintiff been standing just inside the plate glass window, she would have suffered the same injuries. The court held that based on Restatement of Torts, §§ 343 and 344, whether the storekeeper had exercised a reasonable standard of care for its patron was a jury issue. It reversed the lower court that had overturned a jury verdict for the plaintiff. There was no differentiation made about injuries the plaintiff suffered inside or outside the window.
As this case illustrates, foreseeability should not turn on such an immaterial factual distinction. For the patron injured just inside a plate glass window, the question of foreseeability and whether the store exercised reasonable care to protect him or her from adjacent vehicles, should be the same as patrons injured just outside the window on the sidewalk. In some cases a retaining wall might give the inside customer some greater degree of protection. In Dalmo, as well as this case, the glass curtain provided no protection. Both are within the same foreseeable ring of danger, in the Palsgraf[9] sense, for cars adjacent to them operating out of control. See Budet v. K-Mart Corp., 491 So.2d 1248 (Fla. 2d DCA1986).
In Hammond, Judge Blue considered the fact that there had been no similar accidents of ears jumping the curb and hitting patrons *1154 exiting the restaurant. That is also a fact in this case and one relied upon by the majority in affirming the lower court’s summary judgment. Judge Blue wrote, and I agree with him:
There are numerous cases involving accidents where a business allegedly breached its duty of care by failing to install bumper posts or otherwise to protect pedestrians from motor vehicles.... [T]he lack of similar incidents ... in the past is not dispositive on the threshold issue of foreseeability.
668 So.2d at 1005. See also Dalmo Sales; McAllen; Ray; Grissett.
In many of these premises liability cases, the plaintiffs offered expert testimony or affidavits to show that the premises were defectively designed thereby exposing patrons or business invitees to unnecessary peril by the proximity of other patrons operating or parking their cars. Moderate precautions such as six-inch or higher curbs, wheel stops, bollards, and directing traffic flow or parking away from glass windows or areas pedestrian patrons are invited to be, could prevent many such accidents. The existence of such record testimony has buttressed the appellate courts’ decisions that the foreseeability issue is one to be determined by the jury. See Grissett; Johnson; McAllen; Munford, Inc. v. Grier, 136 Ga.App. 537, 221 S.E.2d 700 (Ga.App.1975); Thompson; Barker. There was ample like expert testimony in the record in this case, in my view, to create a jury issue.
In Hammond, Judge Blue suggested that the Florida Supreme Court altered the way appellate courts should address the issue of foreseeability in its opinion in McCain v. Florida Power Corporation, 593 So.2d 500 (Fla.1992). In McCain, the court explained that foreseeability is a double-barrelled consideration. The first is for the court, a question of law, to determine whether the defendant’s conduct foreseeably created a broader zone of risk that poses a general threat of harm to others. It is a “minimal threshold legal requirement for opening the courthouse doors.” 593 So.2d at 502. The second is a question of fact, which the jury (in most cases) should resolve. It concerns whether and to what extent the defendants’ conduct foreseeably and substantially caused the specific injury that actually occurred.
Where a defendant’s conduct is shown to have created a foreseeable zone of risk, the law generally will recognize a duty on the defendant to either lessen the risk or see that sufficient precautions are taken to protect against the harm posed by that risk. As the risk grows greater, so does the duty to limit and protect against the risk. McCain. In this case, as well as the Hammond ease, I think the plaintiffs established the threshold issue of foreseeability.
As shown by the cases discussed in this opinion, this type of accident is not without precedent and is much more common than was perceived by the 27-year-old Schatz case. In my view, Graham was within the zone of danger created by the configuration of the restaurant and parking area and the failure to provide even the most modest kind of barrier between invited patrons parking their cars and those dining just inside the glass curtain. Graham was equally as exposed to danger from invited vehicular traffic parking at the Steak N’ Shake, as was the family picnicking in the area provided by the restaurant outside in Ray v. Cock Robin, Inc., 10 IU.App.3d 276, 293 N.E.2d 483 (Ill. App.1973), affirmed, 57 I11.2d 19, 310 N.E.2d 9 (1974). In my view, this is one case that should have been determined by a jury.

. Conquest v. Auto-Owners Ins. Co., 637 So.2d 40, 42 (Fla. 2d DCA 1994), approved., 658 So.2d 928 (Fla.1995); Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982); State v. Hayes, 333 So.2d 51, 53 (Fla. 4th DCA 1976) (if district court sitting in trial court's district has not spoken on an issue, but another district court has, trial court is required to follow decision from that district).

. Barker v. Wah Low, 19 Cal.App.3d 710, 97 Cal.Rptr. 85 (1971); Chatmon v. Church's Fried Chicken, Inc., 133 Ga.App.' 326, 211 S.E.2d 2 (1974).

. See Dalmo Sales of Wheaton, Inc. v. Steinberg, 43 Md.App. 659, 407 A.2d 339 (Md.App.1979); Barker v. Wah Low, 19 Cal.App.3d 710, 97 Cal. Rptr. 85 (1971); Chatmon v. Church's Fried Chicken, Inc., 133 Ga.App. 326, 133 Ga.App. 326, 211 S.E.2d 2 (1974); Feldman v. Whipkey’s Drug Shop, 121 Ga.App. 580, 174 S.E.2d 474 , cert, denied, 400 U.S. 946, 91 S.Ct. 251, 27 L.Ed.2d 251 (1970); Denisewich v. Pappas, 97 R.I. 432, 198 A.2d 144 (R.1.1964); Ray v. Cock Robin, Inc., 10 Ill.App.3d 276, 293 N.E.2d 483 (Ill.App.1973), affirmed, 57 I11.2d 19, 310 N.E.2d 9 (111.1974); Munford, Inc. v. Grier, 136 Ga.App. 537, 221 S.E.2d 700 (1975); Zippy Properties, Inc. v. Boyd, 667 S.W.2d 312 (Tex.App.1984); McAllen Kentucky Fried Chicken No. I, Inc. v. Leal, 627 S.W.2d 480 (Tex.App.1981).

. Destiny Construction Co. v. Martin K. Eby Constr., 662 So.2d 388 (Fla. 5th DCA 1995); Lynch v. Tennyson, 443 So.2d 1017 (Fla. 5th DCA 1983).

. Prosser, op cit. at 422.

. Prosser, op cit. at 424.

. Am.Jur.2d Vol 40 Hotels, Motels, Restaurants § 111.

. Am.Jur.2d op cit § 82.

. See Palsgraf v. Long Island Railway Co., 248 N.Y. 339, 162 N.E. 99 (1928), a landmark case on the issue of foreseeability.