LEVINE, J.
Appellants appeal from a judgment in their favor, and appellee cross-appeals. We affirm all issues raised without discussion, with the exception of one issue raised on direct appeal, which we reverse. The issue we discuss is whether Illinois’s audit interference doctrine, which permits evidence of a client’s negligence only where the client interferes with an auditor’s services, should be extended to apply to a third party. We find, under the specific facts of this case, that the doctrine applies to the third party appellants. We further find that, because there was no evidence that appellants interfered with appellee’s services, the trial court erred in denying appellants’ motion for directed verdict on appellee’s comparative negligence defense.
Appellant Alan Schein developed a telemarketing system known as the Results System. In 1998, Schein sold a 50% interest in the Results System to Superior Bank. Schein was placed in charge of the bank’s Universal Lending Division (“ULD”), which utilized this system. An “unwind” provision allowed either party to force a sale of the division with the proceeds to be equally divided between Schein and Superior.
As part of the 1998 agreement, Superior was required to provide appellants with “copies of its audited financial statements as soon as practicable after the preparation and distribution thereof.” Superior informed appellee Ernst & Young, LLP, of Superior’s contractual obligation to provide original copies of the audit reports to appellants.
Appellee served as Superior’s auditor since 1988, during which time Superior relied on appellee’s accounting methodology. Appellee consistently issued “clean” *829 audit opinions for Superior. In 1996, Schein contacted appellee and was assured by appellee that Superior’s accounting methodology was “conservative.” In 1998, an independent review partner for appellee refused to “sign off’ on Superior’s audit due to concerns he had about the methodology used to calculate gains on the sale of loans, the valuation of residuals, and the accounting treatment of cash. Neither Superior nor appellants were aware of the independent review auditor’s refusal to sign.[1]
In 2000, Superior hired appellee for a special engagement, specifically to review Superior’s accounting methodology and valuation methods as it pertained to the bank’s interest in securitized mortgages. This special engagement would assist Superior in evaluating the current method of calculating “the present value of financial residuals resulting from the securitization and sale of mortgage loans.” Superior’s chief accounting officer stated that the special engagement was “for everybody within the organization, as well as our investors, and our regulators and our contractual partners.” Appellee was informed that a primary purpose of the special engagement was to benefit contract partners of Superior, such as appellants.
Appellee issued a report concluding that Superior’s accounting methodology was in accordance with generally accepted accounting procedures (GAAP). The chairman of Superior provided appellants with a copy of the report. The special engagement report was important to appellants because it affirmed that Superior was financially sound. Additionally, the report would have alerted appellants to any financial concerns, allowing them to unwind to protect their investment.
Federal regulators, after receiving this report, requested that Superior reduce its reported assets by $117 million. Appellee initially disputed this, but a few days later admitted to Superior’s chairman that ap-pellee “made a mistake.” Appellee determined that the proper reduction, due to accounting methodology, was a total of $420 million dollars in “write-downs.”
Federal regulators took control of Superior. At that point, appellants sought to “unwind” ULD, but the federal regulators would not allow Superior to proceed. In 2001, appellant Results Technologies sold its 50% interest in the Results System to Superior for $12 million dollars. In 2004, the FDIC, which was the appointed receiver for Superior, entered into a settlement agreement with appellee.
In 2003, appellants filed a complaint against appellee claiming causes of actions for professional negligence, gross negligence, and fraud as well as punitive damages. The trial court determined that since Superior was an Illinois company, Illinois law would govern the claims for negligence and gross negligence. Subsequently, the trial court granted appellee’s motion for summary judgment regarding the causes of action for professional negligence and gross negligence for the annual audits performed by appellee. The trial court denied summary judgment for the claims of professional negligence and gross negligence for the special engagement report as well as the claim of fraud. Accordingly, the case proceeded to trial on the claims of professional negligence and gross negligence for the special engagement, as well as fraud.
At the close of the evidence, appellants moved for a directed verdict on appellee’s *830 defense of comparative negligence. Appel-lee claimed that under Illinois law, comparative fault may be considered in a claim against an accountant, such as appellee. Appellants claimed that the comparative negligence defense can be considered only where there is interference with the performance of the auditor or accountant’s duties. Appellants argued that they had nothing to do with the audit, and consequently they could not have interfered with the audit. The trial court allowed the comparative negligence issue to remain for the jury to decide.
The jury found appellees negligent with regard to the special engagement report. The jury found damages of $6 million for appellant Results Technologies and $10 million for appellant Schein. The jury also found Results Technologies 80% negligent and Schein 40% negligent. The jury did not find gross negligence on the part of appellee as it related to the special engagement, nor did the jury find any fraud. The court entered a final judgment reducing the amount of damages awarded in proportion with the percentage of comparative fault. The judgment also awarded prejudgment interest. An appeal and cross-appeal ensue.
The standard for reviewing a trial court’s ruling on a motion for directed verdict is de novo. Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009). Additionally, the standard for reviewing a trial court’s application of foreign law is also de novo. Maryland Sound Indus., Inc. v. Simmons, 845 So.2d 922, 924 (Fla. 4th DCA 2003). “A trial court should grant a motion for directed verdict when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to judgment as a matter of law.” Meruelo, 12 So.3d at 250.
Appellants contend that the trial court erred in denying their motion for directed verdict on appellee’s comparative negligence defense, inasmuch as the relevant Illinois law allows the defense of comparative negligence only where the plaintiff impeded the provision of accounting or audit services.[2] Appellants claim that since they did not interfere in any way with appellee’s performance of the special engagement, then appellee’s comparative negligence defense would fail as a matter of law.
The audit interference doctrine stands for the proposition that “the defendant can only offer evidence that the plaintiffs negligent conduct was a proximate cause of the alleged injury if the plaintiff impeded the defendant’s provision of services.” Bd. of Trs. of Cmty. Coll. Dist. No. 508, Cnty. of Cook v. Coopers & Lybrand, 208 Ill.2d 259, 281 Ill.Dec. 56, 803 N.E.2d 460, 474 (2003) (Garman, J., concurring in part and dissenting in part). Contributory negligence cannot be claimed by an auditor where there is no evidence that the client interfered with the audit. Coopers & Lybrand, 803 N.E.2d at 465.[3]
Even after the Illinois legislature passed a comparative negligence statute, the Illinois Supreme Court found that the *831 statute, which diminished damages to the proportions of fault attributable to the plaintiff, did not abrogate the audit interference doctrine. Id. at 465-68. The Illinois Supreme Court concluded that the “audit interference doctrine in the accounting malpractice context is in accord with recognized principles of comparative fault.” Id. at 468.
Appellee claims that, under Illinois law, the audit interference doctrine is inapplicable since prior Illinois cases have applied this doctrine only to cases involving the auditor and the client. In the present case, appellants are a third party who received and relied on the special engagement report from the client, Superior. Our court, without clear guidance from Illinois law, must attempt to discern how an Illinois court would resolve this issue on appeal. See Maryland Sound Indus., Inc. v. Simmons, 845 So.2d 922, 925-26 (Fla. 4th DCA 2003).
We find that, as a logical extension of Illinois law, there is no reason for a third party not to be considered in the position of a client under the unique facts of this case. The client hired appellee to provide audit services and specifically told appellee that a primary purpose for the special engagement was to provide the report to appellants, a third party with an established interest in the financial soundness of the client.[4] As such, the audit interference doctrine applies to appellants. Further, since there is no evidence of any actual audit interference by appellants, the trial court erred in not directing a verdict in appellants’ favor on the comparative negligence defense. Accordingly, we reverse the trial court’s denial of appellants’ motion for directed verdict on comparative negligence and remand for the trial court to enter a judgment without a reduction for comparative negligence and to recalculate the prejudgment interest.

Affirmed in part, reversed in part, and remanded.

TAYLOR and HAZOURI, JJ., concur.

. The independent auditor, James Grady, had never previously refused to sign off on an audit despite the fact that he had performed audits of two hundred banks and had acted as an independent review partner at least fifty times before.

. In Florida, "when confronted by a choice of law problem, a court will apply foreign law when it deals with the substance of the case and will apply the forum’s law to matters of procedure.” Siegel v. Novak, 920 So.2d 89, 93 (Fla. 4th DCA 2006). In the present case, the trial court correctly applied Illinois law as the appropriate substantive law of the case.

. Florida courts have "decline[d] to adopt” the audit interference doctrine. See Devco Premium Fin. Co. v. N. River Ins. Co., 450 So.2d 1216, 1220 (Fla. 1st DCA 1984).

. We find this result to be consistent with the intent expressed in the Illinois Public Accounting Act. Under Illinois law, an accounting firm is liable to persons not in privity of contract where the accounting firm "was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action.” 225 Ill. Comp. Stat. 450/30.1 (2000). In this case, appellee knew that a primary purpose of the special engagement was to fulfill the client’s contractual obligations to partners of Superior, such as appellants.