DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE LAS OLAS HOLDING COMPANY,** d/b/a **RIVERSIDE HOTEL,** a
foreign corporation,
Appellant,

v.

**MICHAEL DEMELLA,** a/p/r of the Estate of **ALANA DEMELLA,**
Appellee.

No. 4D16-231

[July 19, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE12028526 (13).

Hinda Klein of Conroy Simberg, Hollywood, for appellant.

Gary M. Farmer, Sr., Gary M. Farmer, Jr., and Bradley J. Edwards of Farmer Jaffe Weissing Edwards Fistos & Lehrman, P.L., Fort Lauderdale, and Daniel W. Cotter of The Maher Law Firm, Winter Park, for appellee.

FORST, J.

The Las Olas Holding Company d/b/a Riverside Hotel ("Riverside") appeals a negligence award in favor of the plaintiff, Michael Demella, as personal representative of the estate of his late wife, Alana Demella. The plaintiff sued Riverside for negligence related to a tragic incident in which an intoxicated driver recklessly drove her car into a wall of Riverside's pool cabana. This caused a collapse of the structure and killed the plaintiff's pregnant wife, who was a guest of Riverside. The jury returned a verdict finding Riverside's negligence was a partial cause of this death. On appeal, Riverside makes several arguments, one being that the trial court should have granted its motion for a directed verdict on the issue of negligence. As set forth below, we agree with this argument and therefore reverse and remand with instruction for the trial court to grant Riverside's motion. This opinion also briefly addresses several impermissible comments made by the plaintiff's counsel during opening and closing arguments.

**Background**

Shortly after one p.m. on a Sunday, Rosa Rivera Kim ("Kim") was driving east on SE 4th Street, also known as Sagamore Road ("Sagamore Road"), in Fort Lauderdale. Kim's blood alcohol content at the time of the incident was later determined to be three times the legal limit. As Kim approached a curve in the road, she allegedly failed to turn her steering wheel, failed to move her foot from the gas pedal to the brake pedal, and accelerated straight into Riverside's cabana which was located about fifteen feet away from the road.[1] The force of the impact collapsed the walls of the structure, killing Ms. Demella and slightly injuring her husband, the plaintiff. The latter, as personal representative of his wife's estate, sued Kim and Riverside for negligence. The jury ultimately found both Riverside and Kim responsible and awarded total damages of $24,057,283.00. The jury found that Kim's negligence caused eighty-five percent of the damages, and that Riverside's negligence caused the remaining fifteen percent. Accordingly, the plaintiff was awarded $3,608,592.45 in damages from Riverside.

At trial, the plaintiff introduced evidence to support the argument that Riverside's negligence caused the victim's death. The plaintiff introduced several aerial photographs showing that, as Sagamore Road curves, motor vehicles at one point travel straight toward the cabana before turning right. The plaintiff argued that the physical layout of the road created a foreseeable zone of risk encompassing the cabana. To buttress its case, the plaintiff utilized an expert who specialized in barriers and low speed accidents. The expert testified that if Riverside had placed palm trees in front of the cabana, the deadly incident may not have occurred.[2] However, per photographs taken of the premises prior to the incident, to reach the outer wall of the cabana—fifteen feet from the road—a vehicle would need to "jump" an approximately three-inch curb, cross a sidewalk, drive through a wall of bushes, and avoid hitting both a utility pole and a palm tree.

---

[1] Riverside's expert witness testified that Kim must have been significantly accelerating to reach 58 miles per hour on a 600 feet roadway. He also concluded that Kim did not apply the brakes at any point prior to impact with the building. He based this conclusion on the fact that there were no brake marks on the roadway—indicating the car did not try to stop—and based on video footage of the car seconds before impact.

[2] We need not address whether the expert was qualified for purposes of section 90.702, Florida Statutes, given our reversal on the motion for a directed verdict. However, we do note that the trial court judge expressed "extraordinary, extreme misgivings" about the expert's qualifications and that even the expert himself stated, "I'm not an expert in palm trees."

The plaintiff also sought to show that the road in front of the cabana was dangerous due to speeding. He introduced an email in which Riverside's then-general manager told the City Commissioner in 2011,

> Sagamore Street at my hotel seems like a race track. My customers cross this street to get to the pool and the marina. My valet staff crosses the street to get to cars out of valet lots. Numerous times, I have seen cars drive this road at above the speed limit and nearly hit somebody. We need to do something to slow down that traffic and make sure—and clearly make the two crosswalks. I would love to meet with the traffic engineer to discuss some ideas.

The plaintiff then presented several former Riverside employees who testified that they and Riverside had known about the speeding on Sagamore Road. A former Riverside executive explained that he received "multiple reports from coworkers regarding concerns about speeding on [Sagamore Road]," and a former employee likened the road to I-95. The plaintiff also presented evidence that Riverside had previously erected, on at least two occasions, stop signs to slow traffic. Riverside's witness, who was an engineer for Broward County, later explained that the county removed the signs after conducting a traffic study and finding that the road did not merit them.[3] To counter this traffic study, the plaintiff presented a separate study conducted by the county in 2011 which showed that about fifteen percent of vehicles sped on Sagamore Road on the day of observation. However, even though the study recognized that there was speeding, it contained the conclusion of an engineering technician that there were no "sight-distance limitations or other physical conditions that would indicate Southeast 4th [was] operating in an unsafe manner."

At the conclusion of the plaintiff's case, Riverside moved for a directed verdict. Riverside argued that the plaintiff "failed to sustain the burden of demonstrating that before this accident happened it was reasonably foreseeable that [an incident of this nature] would take place on [Riverside's] premises." Riverside noted that the cabana had complied with all building codes and zoning regulations since its creation in 1963. Moreover, while conceding that the plaintiff's evidence showed that there was some speeding on the road, Riverside argued that the speeding posed a foreseeable threat only to invitees *crossing* that road, and not to

---

[3] Although this witness testified after Riverside's motion for directed verdict, we are required to consider the evidence both before and after the motion which was denied. *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

individuals *in* the cabana. Riverside also noted that, in the more than forty-nine-years of the road's existence, there had never been an off-road accident.[4] The trial court was ultimately unpersuaded, and denied Riverside's motion.

Following the denial of its motion, Riverside presented its own evidence. First, it submitted expert testimony by a professional structural engineer who opined about the structural integrity of the cabana at the time of the incident. The engineer explained that the cabana contained solid concrete columns reinforced with steel and that each column weighed about one thousand pounds. Between the concrete columns was wood siding. Relying primarily on the pictures of the aftermath of the incident, the engineer concluded that when Kim crashed into the cabana, her vehicle mainly struck one of these concrete columns, knocking it back twelve feet. The expert calculated that Kim's car had to generate about 40,000 to 43,000 pounds of force to shear the column off its base and, in order to generate such force with her car, Kim must have been driving about fifty-three to fifty-four miles per hour.

Riverside then presented a second engineer who was an expert in traffic engineering and accident reconstruction. The expert began by noting that Sagamore Road was only three blocks long, situated in a central business district filled with shops, restaurants, and residences. The expert then focused on the road's curve, concluding it was "not a problem." The road lanes were a standard twelve feet wide. The radius of the road's curve was "right in line with typical curves in urban areas with a 25-mile-per-hour speed limit." There were also no sight limitations. The pavement was clearly marked, and a driver could tell from 600 feet away that the road would curve. The expert concluded, "And all of the factors: speed, volume, curvature, width, length, you name it, all indicated that this was a roadway that's functioning very well and does not have problems with its curve."

The same expert then testified that, based on historical data from various city and county documents, there had never been a car crash at or near the curve from 1963 until 2012. The expert then discussed the traffic volume on the road, estimating that about thirty million cars had driven on it from 1963 until 2012. In light of the historical data and

---

[4] Although this argument was later supported by Riverside's own evidence, the expert called by the plaintiff who testified regarding the fifteen percent statistic described above also testified that, again based on a county traffic study, there had in fact been one previous accident on the road. However, the engineer did not provide any specifics about the accident, including whether it was an on-road or off-road accident.

volume statistics, the expert concluded that the chances of a car crash happening at the time of the instant drunk driving incident were "statistically as close to zero as you can get in a roadway transportation system." At the conclusion of the case, once the jury returned a verdict finding Riverside partly responsible, Riverside renewed its motion for a directed verdict, and the trial court again denied it.

Riverside also moved for a mistrial during opening and closing arguments because of various statements made by the plaintiff's counsel. In particular, the plaintiff's counsel stated during opening that, "the reason why we are in this courtroom today is that this corporation has refused to accept any responsibility for its role in this death." Riverside objected to this statement, and the trial court sustained the objection. Nevertheless, counsel made a similar statement moments later: "They will look at everyone else's conduct but their own. And these are defenses that are just attempts to avoid responsibility." In closing, when seeking damages for wrongful death, counsel remarked:

> What do we put price tags on in our society today? What is it? I mean, if we—what do we pay LeBron James for the excitement that he brings? . . . We pay $30 million a year for the value that he brings to Miami. We pay a boxer $180 million for 12 rounds of boxing. We pay this expert $500 an hour. If her life is worth what that expert . . . . If her life is worth that type of enjoyment, those are just ways to come about: What is this really worth? . . . .

The two arguments raised by Riverside on appeal which we address are that the trial court erred in denying its motion for a directed verdict on the issue of negligence, and that the court erred in denying its motions for mistrial based on the above-quoted comments by the plaintiff's counsel during opening and closing arguments.

**Analysis**

A. _Riverside's motion for a directed verdict regarding negligence_

"The standard for reviewing a trial court's ruling on a motion for directed verdict is de novo." _Schein v. Ernst & Young, LLP_, 77 So. 3d 827, 830 (Fla. 4th DCA 2012). "A trial court should grant a motion for directed verdict when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to judgment as a matter of law." _Id._ (quoting _Meruelo v. Mark Andrew of Palm Beaches, Ltd.,_

12 So. 3d 247, 250 (Fla. 4th DCA 2009)).

"A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015) (citing *Clay Elec. Co-Op., Inc. v. Johnson,* 873 So. 2d 1182, 1185 (Fla. 2003)). "[A] plaintiff in a premises liability action must allege the defendant's duty to the plaintiff and the defendant's breach of that duty by alleging ultimate facts that show a relationship from which a duty is implied by law, and the acts and omissions that caused the injury, together with the allegation that they were negligently done or omitted. The plaintiff must also plead that the [defendant's negligence] was a proximate cause of the [plaintiff's injury]." *Kaid v. Store Cent. Food Mkt., Inc.*, 668 So. 2d 1110, 1111 (Fla. 3d DCA 1996) (alterations in original) (quoting 41 FLA. JUR. 2D *Premises Liability* § 96 (1994)). Here, the trial court erred in denying Riverside's motion for a directed verdict based on each of the first three elements (duty, breach, and proximate cause).

1. *Duty*

The existence of a duty is a "*legal* requirement for opening the courthouse doors." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992) (footnote omitted). In the context of general negligence, those doors open only if the injury was the product of a reasonably foreseeable danger—one within the foreseeable zone of risk. *Id.* In a premises liability case, this Court stated that a property owner "is ordinarily under no duty to exercise any care to warn or guard against the harmful acts of a third party unless that third party's harmful behavior is reasonably foreseeable." *Leitch v. City of Delray Beach*, 41 So. 3d 411, 412 (Fla. 4th DCA 2010).

The standard jury instructions for premises liability, which were given in this case, frame the issue as follows:

> [W]hether (defendant) negligently failed to maintain [its] premises in a reasonably safe condition, or negligently failed to correct a dangerous condition about which (defendant) either knew or should have known, by the use of reasonable care, or negligently failed to warn (claimant) of a dangerous condition about which (defendant) had, or should have had, knowledge greater than that of (claimant); and, if so, whether such negligence was a legal cause of loss, injury, or damage

6

to (claimant, decedent or person for whose injury claim is made).

Fla. Std. Jury Inst. (Civ.) 401.20.

The plaintiff's evidence at trial of Riverside's duty was lacking. First, the plaintiff sought to prove a duty by presenting aerial photographs of the physical layout of Sagamore Road, which showed that, as the road slightly curves, motor vehicles at one point travel straight towards the cabana before turning right to continue on the road. We need not decide in this case whether such a curve in this particular road, with a twenty-five miles per hour speed limit, was a "dangerous condition" to pedestrians on the sidewalk or lawn maintenance workers trimming the bushes. However, we do hold that this curve was not a "dangerous condition" giving rise to a duty with respect to people, like the plaintiff's wife, who were inside Riverside's cabana. Evidence that Riverside was aware of the road's slight curve is legally insufficient to establish that Riverside "knew or should have known" of a dangerous condition on its own premises.[5]

In fact, not only did the plaintiff fail to present the evidence required, Riverside presented compelling evidence to the contrary. As noted in the Background Section above, Riverside's expert in traffic engineering and accident reconstruction testified, based on his review of city and county documents, that there had never been an off-road accident on Sagamore Road since its creation in 1963. In other words, in more than forty-nine years, a car had never swerved off the road except in the current case involving a severely intoxicated (blood alcohol content three times over the legal limit) and reckless (no indication that she attempted to make the turn or slowdown from her above-the-limit speed) driver. Statistically speaking, the engineer explained, the chances of a crash were "as close to zero as you can get in a roadway transportation system."[6] Though case law has held that an "absence of accidents" statistic does not *dispositively* relieve a landowner of his or her duty to protect an invitee, in the absence of "constructive knowledge of similar accidents at other similar locations," such a statistic can certainly still *shed light* on the difference between

---

[5] We note that the plaintiff did not argue that the death in this case was attributable to a design or building flaw with respect to the cabana, from which Riverside may have had a duty to protect the plaintiff and his wife, as opposed to the claim that Riverside should have built a sturdier cabana to protect from the allegedly separate risk posed by the road.

[6] Even accepting the plaintiff's evidence which indicated that there was one accident of an unknown nature on this road in the past, Riverside's expert's conclusion remains compelling.

whether an accident is merely possible and whether it is reasonably foreseeable. *Springtree Props., Inc. v. Hammond*, 692 So. 2d 164, 168 (Fla. 1997); *see also Lewis v. Sun Time Corp.*, 47 So. 3d 872, 873 (Fla. 3d DCA 2010) ("It is well recognized that a no-accident history of the location of a premises liability case may be admitted into evidence for a variety of purposes including the central one of showing that the area was not in fact dangerous or defective.").

We are also unpersuaded that the evidence of "speeding" on Sagamore Road established that the placement of this particular cabana fifteen feet from the road constituted a dangerous condition about which Riverside knew or should have known. The former Riverside employees who testified were concerned with speeding solely in relation to Riverside's invitees *crossing the road* from one hotel building to the next. None of the plaintiff's witnesses stated or even hinted that they or Riverside's management were afraid that speeding might lead to an accident involving a nearby structure such as the cabana, or even pedestrians on the sidewalk.

Various Florida courts have determined that some accidents are too unusual or extraordinary to be reasonably foreseeable. In *Florida Power & Light Co. v. Macias ex rel. Macias*, 507 So. 2d 1113 (Fla. 3d DCA 1987), the court held that a utility company did not have a duty to protect drivers from a utility pole it placed six feet away from Okeechobee Road. *Id.* at 1114-16. The court held that, without more evidence suggesting the road was dangerous, and because "the chance that a vehicle in the ordinary course of travel will deviate from the roadway and collide with a pole is only a remote possibility, under certain circumstances [such a collision] is not a legally foreseeable event." *Id.* at 1115. Those "certain circumstances" the court alluded to include evidence that the pole "was not obscured from view, visibility was good, and the speed limit was moderate." *Id.* at 1116. The present case is similar. As the county's 2011 speed study showed, there were no "sight-distance limitations or other physical conditions that would indicate Southeast 4th [was] operating in an unsafe manner." Moreover, the speed limit of the road was "moderate," arguably even low—only twenty-five miles per hour. As in *Macias*, this case presents such a remote possibility of an injury that the placement of this pool cabana in relation to Sagamore Road cannot be found to have created a "dangerous condition" to people in the pool cabana of which Riverside was actually or constructively aware and that further created a duty on the part of Riverside to protect the plaintiff's wife and other invitees from said "danger."

The case of *Graham v. Langley*, 683 So. 2d 1147 (Fla. 5th DCA 1996), is also similar to the instant case. There, an intoxicated driver, while

8

attempting to park in a restaurant's parking lot, drove over a curb, across a sidewalk, and through a plate glass window of the restaurant, hitting a customer who then filed a negligence claim against the restaurant owner. *Id.* at 1148. The plaintiff contended his injuries were attributable, in part, to the height of the parking lot curb, with his expert opining "that the curb at the point of the accident was approximately 3 ½ inches high and that, had it been six inches high, it may have stopped Langley's vehicle." *Id.* The Fifth District Court of Appeal first held that, "in order to impose a duty upon [the restaurant], Langley's driving into [the restaurant] must have been reasonably foreseeable, not just possible." *Id.* (citing *Firestone Tire & Rubber Co. v. Lippincott,* 383 So. 2d 1181 (Fla. 5th DCA 1980)). Next, in addressing foreseeability, the court noted that this type of "specific incident" had not occurred "with such frequency that it may be expected to happen again," and thus there was no "suggest[ion] that the defendant reasonably needed to take steps to avoid or prevent the incident." *Id.* In both *Graham* and the instant case, "the record is clear that no vehicle previously had been driven into that . . . restaurant [or cabana]." *Id.*

Moreover, in both this case and *Graham,* there was no evidence presented that there was a construction code violation (in *Graham* with respect to the height of the curb, in the instant case with respect to the cabana's structure or distance from the road). Finally, the *Graham* opinion referenced two earlier opinions from the First and Second District Courts of Appeal for the proposition "that although store owners have a duty to exercise ordinary care to maintain their premises in a reasonably safe condition, they have no duty to protect patrons from injuries caused by a vehicle driven through a window and into the store." *Graham,* 683 So. 2d at 1148 (citing *Jones v. Dowdy,* 443 So. 2d 467, 467 (Fla. 2d DCA 1984); *Schatz v. 7-Eleven, Inc.,* 128 So. 2d 901, 904 (Fla. 1st DCA 1961)); *see also Food Fair, Inc. v. Gold,* 464 So. 2d 1228, 1229-31 (Fla. 3d DCA 1985) (reversing and remanding for the trial court to enter a directed verdict in favor of the defendant store because the store owed no duty to protect its invitee from a car crashing into her in the parking lot).

In sum, the mere fact that some speeding occurred on the slightly-curved Sagamore Road does not mean that a dangerous condition existed at Riverside's premises, of which Riverside was aware or should have been aware, which extended to persons inside the cabana situated fifteen feet back from the road. Sagamore Road had a twenty-five mile per hour speed limit sign, visibility was clear, there was no history of any off-road accidents in the forty-nine year existence of this road and curve, and there were no other physical conditions that would indicate the road was dangerous. "It is incumbent upon the courts to place limits on foreseeability, lest all remote possibilities be interpreted as foreseeable in

the legal sense." *Macias*, 507 So. 2d at 1115. We do so here, and reverse the trial court with respect to Riverside's motion for directed verdict on the issue of duty.

2. *Breach*

Even if we were to agree with the trial court that, due to the placement of this pool cabana in relation to Sagamore Road, a dangerous condition existed on Riverside's premises of which it knew or should have known, thus creating an affirmative duty on the part of Riverside to protect the users of its pool cabana from these dangers, we hold that Riverside did not breach that duty.

"In a negligence action, whether a defendant exercised reasonable care under a given set of facts is *generally* an issue for the jury to decide." *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 557 (Fla. 4th DCA 2008) (emphasis added). However, "where the facts are undisputed, or are viewed in the light most favorable to the plaintiff, the question of breach can be decided by a court on . . . a motion for directed verdict." *Langbehn v. Pub. Health Tr. of Miami-Dade Cty.*, 661 F. Supp. 2d 1326, 1336-37 (S.D. Fla. 2009) (citing *L.A. Fitness*, 980 So. 2d at 557-62; *Franco v. Miami-Dade Cty.*, 947 So. 2d 512, 517 (Fla. 3d DCA 2006); *St. Joseph's Hosp. v. Cowart*, 891 So. 2d 1039, 1041-42 (Fla. 2d DCA 2004)).

Even viewing the facts in the light most favorable to the plaintiff, Riverside took sufficiently reasonable precautions to fortify and protect its invitees within the cabana from car accidents such that it did not breach its duty, if one existed, as a matter of law. As already mentioned, Riverside protected its cabana from any danger posed by the road by use of a curb (whether this was placed by Riverside or merely used by it is irrelevant), a palm tree, and various hedges. Then, although the cabana itself was partially comprised of wood siding, it contained thousand-pound solid concrete columns reinforced with steel. The cabana was up-to-code and in a proper location according to the zoning regulations. Finally, Riverside attempted, on multiple occasions, to slow the traffic on Sagamore Road, even going so far as to erect its own stop signs before the county government removed them.

It is easy, in hindsight, to recognize exactly what precautions could have been taken to avoid any specific injury. The fact that Riverside did not erect a palm tree or other barricade in exactly the right spot to prevent a driver from taking this particular path through its defenses is both unfortunate and tragic, but it is not a breach of duty. Assuming Riverside had a duty to take reasonable care to protect its invitees, including the

plaintiff's wife, from the dangers of the road, it did so as a matter of law under the specific facts of this case.

### 3. *Proximate Cause*

Finally on the issue of the directed verdict, even if Riverside breached a duty of care to the plaintiff's wife, the evidence with respect to proximate causation was sufficiently "unequivocal" to "take this matter from the fact-finder." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992); *see also Chirillo v. Granicz*, 199 So. 3d 246, 252-53 (Fla. 2016) (holding that a court may decide the issue of proximate cause without sending it to the jury if "the evidence supports no more than a single reasonable inference" (quoting *McCain*, 593 So. 2d at 504)). As our supreme court explained, "[t]he law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience." *McCain*, 593 So. 2d at 503.

Contrary to the plaintiff's argument below and on appeal, the death of the plaintiff's wife was not caused by Riverside's failure to place additional palm trees between the road and the cabana. Instead, her death was unequivocally attributable only to "an improbable freak [accident]." *Id.* To recap: Kim (the driver) was intoxicated to more than three times the legal limit and, with no apparent attempt to brake or turn away, drove across an oncoming traffic lane, over a curb, across a pedestrian sidewalk, through a row of bushes, narrowly avoided a palm tree and utility pole, and collided with the steel-reinforced concrete column of the cabana, set back fifteen feet from the road, with enough force to cause it to collapse.

"An intervening cause may relieve the defendant . . . from liability if the intervening cause is completely independent of the defendant's negligence, was not set in motion by the defendant's negligence, and was not foreseeable by the defendant." *Bosket v. Broward Cty. Hous. Auth.*, 676 So. 2d 72, 74 (Fla. 4th DCA 1996). Here, the jury found that Kim was the primary cause of the plaintiff's damages. We hold but a step further, that under the "freakish and improbable chain of events" involved in this case, "the evidence supports no more than a single reasonable inference." *McCain*, 593 So. 2d at 504. That inference is that the plaintiff's wife's death was "unquestionably unforeseeable," even assuming it was caused by a dangerous condition. *Id.* at 503.

For the reasons set forth above, we hold that Riverside owed no duty of care to the plaintiff's wife where the cabana's placement near the road did not create a dangerous condition of which Riverside should have been aware. We further hold that, even assuming such a duty, the facts (viewed

in the light most favorable to the plaintiff) establish that Riverside met this duty by establishing various barriers to vehicles, meeting all building and zoning codes, and by taking action to minimize the speed at which traffic passed. Finally, we hold that, even assuming a duty and breach had been established, the entirely unforeseeable ("freakish and improbable") scenario which led to the plaintiff's wife's death in this case removes, as a matter of law, the necessary element of proximate cause connecting any duty and breach on the part of Riverside to the injuries sustained. Accordingly, we reverse the trial court's denial of Riverside's motion for a directed verdict and remand with instructions to grant said motion.

## B. *Riverside's motions for a mistrial based on opening statements and closing arguments*

"A trial court's denial of a motion for mistrial and a motion for new trial based on improper closing arguments are reviewed for abuse of discretion." *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753, 759 (Fla. 4th DCA 2016) (quoting *Whitney v. Milien*, 125 So. 3d 817, 818 (Fla. 4th DCA 2013)).

Riverside argues on appeal that the trial court erred in denying its motion for a mistrial based on the plaintiff's counsel's remarks during opening and closing arguments. "Generally, a mistrial or new trial should be granted only when counsel's arguments are so inflammatory and prejudicial that they deny the opposing party a fair trial." *Bakery Assocs., Ltd. v. Rigaud*, 906 So. 2d 366, 367 (Fla. 3d DCA 2005) (quoting *Maksad v. Kaskel*, 832 So. 2d 788, 793 (Fla. 4th DCA 2002)). When assessing the comments, "[c]ontext is crucial. To determine whether the challenged statements and arguments were in fact prejudicial, the statements cannot be evaluated in isolation but must be placed and evaluated in context." *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1272 (Fla. 2006).

Though we are not required to address this matter in light of our holding on the directed verdict issue, we express our concern regarding several of the comments made by the plaintiff's counsel during opening and closing arguments, and caution against their future use. The plaintiff's counsel stated during opening that, "the reason why we are in this courtroom today is that this corporation has refused to accept any responsibility for its role in this death." After the trial court correctly sustained objections to this statement, the plaintiff's lawyer doubled down, stating, "[t]hey will look at everyone else's conduct but their own. And these are defenses that are just attempts to avoid responsibility."

As the Third District Court of Appeal has declared, "[t]he law is clear that it is improper for an attorney to disparage an opposing party's defense

12

of a case or to suggest that a party should be punished for contesting a claim." *Fasani v. Kowalski*, 43 So. 3d 805, 809 (Fla. 3d DCA 2010). We recently reaffirmed this principle. *See Calloway*, 201 So. 3d at 765. We thus find it inexplicable that counsel would so wantonly make statements opening the door for a mistrial, both in these statements made during opening, as well as in the "value of human life" comments made during closing. *See City of Orlando v. Pineiro*, 66 So. 3d 1064, 1070 (Fla. 5th DCA 2011) ("It is clearly error to ask a jury to place a monetary value on the life of a decedent because 'the value of a human life is not an element of damages and is not the proper topic for closing argument.'" (quoting *Wilbur v. Hightower*, 778 So. 2d 381, 383 (Fla. 4th DCA 2001))).

## Conclusion

The plaintiff and his wife were, unfortunately and through no fault of their own, in the wrong place at the wrong time. However, Riverside was also without fault. Riverside owed no duty of care to invitees within its walls with regard to Sagamore Road, as a danger to the hotel's invitees from the placement of the pool cabana in relation to that road was not one of which Riverside knew or should have known. Additionally, even if a duty was owed, the actions taken to prevent injury were legally sufficient such that there was no breach of this duty. Finally, even assuming a duty and a breach, the collision of the severely intoxicated driver's car with the pool cabana, at such speed and force as to collapse the steel-reinforced concrete columns of the cabana, was an extraordinary and unforeseeable event, making Riverside legally not the proximate cause of any of the injuries suffered in this highly fact-specific case. Thus, we reverse and remand for the trial court to grant Riverside's motion for a directed verdict.[7]

*Reversed and remanded.*

WARNER and LEVINE, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

---

[7] In light of our holding, we need not rule on the trial court's denial of Riverside's motions for mistrial related to the plaintiff's counsel's opening and closing arguments.